UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

Certified Mail #7019 1120 0000 5525 2222

SACOREY CLARK #45720-044,
LAVERNE HENDERSON #14239-035,
        PLAINTIFF(s),

                v.

CASE NO. # 3:20-cv-00749-JPG

MR. E. WILLIAMS;
MR. T.G. WERLICH;
MS. SANTIAGO;
MR. CHEEKS;
MR. PATTERSON;
MS. ROSALIN ROBINSON;
MR. SERIO;
MS. DUGDALE;
MR. SCHMIDT;
MR. PEREZ;
MR. W. PHILLIPS;
MS. HODGES;
MS. HUSTON; ·
MR. SEELY;
MR. T. PHILLIPS;
MS. HERNANDEZ;
MRS. FITZPATRICK;
MR. ALLEN;
MR. JONES;
MR. DOWDING;
MR. HARKINS;
MR. JAY BAGWELL;
MS. A. WELLS and/or A. DOMINGUIEZ;  &
MR. M. PUCKETT;
        DEFENDANT(s).

Plaintiff(s) Requests/Demands
a Trial by Jury

  X  Yes  ___ No

### VERIFIED, AMENDED PRO SE CIVIL ACTION COMPLAINT,
UNDER 28 U.S.C. §1331, §1332(a), §1343(a)(1), §1343(a)(2), §1343(a)(4), §1367 AND 42 U.S.C. §1985(3) & §1986

I.    STATEMENT OF JURISDICTION

1.    Jurisdiction of this Court is invoked, under 28 U.S.C. §1331, in that this a Civil Action, which brings Claim(s) Arising under the Law(s) of the United States and also the Constitution of the UNITED STATES.

2.    Claim(s) brought by PLAINTIFF(s) under 28 U.S.C. §1331, equally establishes that the Waiver of the Government's Sovereign Immunity exists under 5 U.S.C. §702 and equally applies to Only those claims for Specific relief asserted against DEFENDANT(s), in their Official Capacity.
See: Mich. v. U.S. Army Corps of Eng'rs, 667 F.3d 765, 775 (7th Cir. 2011), "[T]he waiver in §702 is not limited only to claims brought pursuant to the review provisions contained in the APA itself."

3.    Jurisdiction of this Court also exists under 28 U.S.C. §1332(a), thus Diversity Citizenship Jurisdiction exists, where the Domocile for Prisoner(s), SACOREY CLARK, and LAVERNE HENDERSON, are presumed to be the State which each PLAINTIFF Named herein, had lived in before being imprisoned, which in this particular case had been the State of Missouri. See: Sullivan v. Freeman, 944 F.2d 334, 337 (7th Cir. 1991).

4.    SACOREY CLARK and LAVERNE HENDERSON, are the sole PLAINTIFF(s) in this Action, therefore No PLAINTIFF Named herein, is presumed to be a Citizen of the Same State, as Any of the DEFENDANT(s), herein Named. The State of Missouri is the Domocile, which the law

1

attributes to both PLAINTIFF SACOREY CLARK & PLAINTIFF LAVERNE HENDERSON. And Missouri is also the Domocile from which PLAINTIFF SACOREY CLARK & PLAINTIFF LAVERNE HENDERSON have no intention of moving and to which is the place that they each have the intention of Returning. PLAINTIFF CLARK, evinces this by State of Missouri Drivers License No. # A225176001. And PLAINTIFF HENDERSON, evinces this by equally being a Father and Parent to his Two (2) Biological daughter(s), which are Domestic Relation(s), which exist as legal consequences, and as the State of Missouri is also the Assigned Domocile at Birth for PLAINTIFF HENDERSON, along with both of his Daughter(s).

Furthermore, the Actual Controversy in this case is linked to relief sought, which exceeds the Amount of $75,000, thus Diversity Jurisdiction in this matter is complete. See: Wisconsin Dep't of Corrections v. Schacht, 524 U.S. 381, 388, 118 S.Ct. 2047 (1998).

5.     Jurisdiction of this Court exists under 28 U.S.C. §1343(a)(1), §1343(a)(2) and §1343(a)(4), especially to recover damages for injury to his person, or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in §1985 of Title 42.

And also, to recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in §1985 of Title 42, which he had knowledge were about to occur and power to prevent. Then, to further recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

6.     All claim(s) herein stated by PLAINTIFF(s) CLARK & HENDERSON, equally derived from a common nucleus of Operative Fact(s). See: Sanchez & Daniels v. Koresko, 503 F.3d 610, 614 (7th Cir. 2007).

7.     Jurisdiction of this Court exists further under 28 U.S.C. §1367, especially with respect to the existing Ultra Vires Conduct being linked to the Fact(s) being pleaded, herein, which has occurred in excess of the powers and authority of the Sovereign.

II.    STATEMENT OF PARTIES To This Complaint

A.     THE PLAINTIFF(s)

8.     PLAINTIFF NO. # 1:

9.     Name: SACOREY CLARK;

10.    Prisoner Registration Number: # 45720-044;

11.    Current Institution:

12.    Indicate your prisoner status: Convicted and Sentenced Federal Prisoner;

13.    PLAINTIFF NO. # 2:

14.    Name: LAVERNE HENDERSON;

15.    Prisoner Registration Number: # 14239-035;

16.    Current Institution:

17.    Indicate your prisoner status: Convicted and Sentenced Federal Prisoner;

B.    THE DEFENDANT(s)

18.    DEFENDANT MR. E. WILLIAMS, at all times relevant has been the Warden, at FCI-GREENVILLE, or otherwise has been the Associate Warden, at FCI-GREENVILLE.

19.    DEFENDANT MR. T.G. WERLICH, at all times relevant has been the Previous Warden, at FCI-GREENVILLE.

20.    DEFENDANT MS. SANTIAGO, at all times relevant has been an Associate Warden, at FCI-GREENVILLE.

21.    DEFENDANT MR. CHEEKS, at all times relevant has been an Associate Warden, at FCI-GREENVILLE.

22.    DEFENDANT PATTERSON, at all times relevant has been the Captain, at FCI-GREENVILLE.

23.    DEFENDANT ROSALIN ROBINSON, at all times relevant has been the Unit Manager for Housing Unit(s) #1 & #2, at FCI-GREENVILLE.

24.    DEFENDANT MR. SERIO, at all times relevant has been (SIS) Lieutenant and Technician for the Special Investigation Services, at FCI-GREENVILLE. And has recently became (SIS) Supervisor for the Special Investigation Services, at FCI-GREENVILLE.

25.    DEFENDANT MS. DUGDALE, at all times relevant has been (SIS) Lieutenant and a Technician, whom had also been (SIS) Supervisor for the Special Investigation Services, at FCI-GREENVILLE.

26.    DEFENDANT MR. SCHMIDT, at all times relevant has been a (SIS) Lieutenant and Technician for the Special Investigation Services, at FCI-GREENVILLE.

27.    DEFENDANT MR. PEREZ, at all times relevant has been a (SIS) Lieutenant and Technician for the Special Investigation Services, at FCI-GREENVILLE.

28.    DEFENDANT W. PHILLIPS, at all times relevant has been a (SIS) Lieutenant and Technician for the Special Investigation Services, at FCI-GREENVILLE.

29.    DEFENDANT MS. HODGES, at all times relevant has been a (SIS) Lieutenant and Technician for the Special Investigation Services, at FCI-GREENVILLE.

30.    DEFENDANT MS. HUSTON, at all times relevant has been the Housing Unit 2-A Casemanger & the SHU Casemanger for Housing Unit 2-A Inmates, at FCI-GREENVILLE.

31.    DEFENDANT MR. SEELY, at all times relevant has been the Housing Unit 2-A Counselor & the SHU Counselor for Housing Unit 2-A Inmates, at FCI-GREENVILLE.

32.    DEFENDANT MR. T. PHILLIPS, at all times relevant has been the Housing Unit 1-A Counselor, at FCI-GREENVILLE.

33.    DEFENDANT MS. HERNANDEZ, at all times relevant has been the Chief Psychologist for Both General Population Inmates & SHU Inmates, at FCI-GREENVILLE.

34.    DEFENDANT MRS. FITZPATRICK, at all times relevant has been the Supervisor over both Receiving & Discharge (R & D) and the Institutional Mailroom, at FCI-GREENVILLE.

35.    DEFENDANT MR. ALLEN, at all times relevant has been a Mailroom Staffmember, at FCI-GREENVILLE.

36.    DEFENDANT MR. JONES, at all times relevant has been a Mailroom Staffmember, at FCI-GREENVILLE.

37.    DEFENDANT MR. DOWDING, at all times relevant has been a Correction Officer, at FCI-GREENVILLE.

3

38.     DEFENDANT MR. HARKINS, at all times relevant has been the Classification Manager Coordinator (CMC), at FCI-GREENVILLE.

39.     DEFENDANT MR. JAY BAGWELL, at all times relevant has been an Executive Staffmember, at FCI-GREENVILLE.

40.     DEFENDANT MS. A. WELLS and/or DOMINGUIEZ, at all times relevant has been the Warden's Secretary, or D.H.O. Secretary, at FCI-GREENVILLE;

41.     DEFENDANT MR, M. PUCKETT, at all times relevant has been the (D.H.O.) Discipline Hearing Officer, assigned to FCI-GREENVILLE by Region;

III.        STATEMENT OF FACT(s), AVERMENT(s) & CLAIM(s) FOR RELIEF

42.        DEFENDANT(s) Named herein, are each Sued in both their Individual and their Official Capacities, respectively as Paragraph(s) _1_ through _41_, are incorporated by reference as if separately stated.

43.        Paragraph(s) _42_ through _236_, are incorporated by reference as if separately stated in these Fact(s), Averment(s) and Claim(s) for Relief, which are more fully stated below.

44.        On Information & Belief, the Merit of PLAINTIFF(s) Claim(s), rest upon the Right of Access to the Court(s) being Violated and deprived to PLAINTIFF(s), thus PLAINTIFF(s) Claim(s) have been frustrated, interfered with and/or otherwise impeded and has equally resulted in PLAINTIFF(s) being prejudiced and/or injured.

45.        On Information & Belief, the Merits of PLAINTIFF(s) Claim(s) rest upon the False Record(s), fraudulent Record(s) and/or the deliberately erroneous, and maliciously inaccurate Record(s), created by Unqualified Staff, or DEFENDANT(s), which diplays a showing that no matter what procedures are put in place, the procedure(s) themselves can become a Blanket Policy/Custom of their own Origin, when Unqualified Staff, or the Corrupt are relied upon.
        Such as, the existing Blanket Policy/Custom Carried out by DEFENDANT(s) T. PHILLIPS, A. DOMINGUEIZ/WELLS & OTHER DEFENDANT(s), that is evidenced by the Record(s), with respect to paragraph(s) #_183_, #_201_, #_203_ & #_206_, which has adversely affected PLAINTIFF CLARK, being afforded equal protection of the law(s) and privileges of the UNITED STATES, being afforded Right of Access to the Court(s) and being afforded his right to petition for redress of grievances, under the 1st & 5th Amendment(s) and right(s) under 28 CFR §541.1 et. seq., especially $541.7(b), (d), (d)(2) & (e).
        Or, the existing Blanket Policy/Custom Carried out by DEFENDANT(s) WERLICH, PATTERSON & HENANDEZ, that is evidenced by the Record(s), with respect to "SHU Timeout(s)" & the PSIQ & PDS Record(s), which deliberately & Maliciously consist of Not Recording, or Documenting the Inmates held under SHU Timeout(s) and the Emotional Distress Suffered by the Racially Motivated SHU Timeout(s). Or the existing Blanket policy Carried out by DEFENDANT(s) HUSTON & FITZPATRICK, that is evidenced by the Record(s), with respect to Half-way House placement(s) & Warrant(s) that have been treated like Detainer(s), which has been adversely affecting FCI-GREENVILLE Prisoner(s) being Afforded equal protection of the law(s) & the privileges, being afforded Right of Access to the Courts and being afforded rights to petition for redress of grievances, under the 1st & 5th Amendment(s).

46.        On Information & Belief, the Merits of PLAINTIFF(s) Claim(s) rest upon the PLAINTIFF(s) suffering Discipline, as an injury and prejudice for attempting to gain access to the Court(s). Which resulted in PLAINTIFF(s) being barred from having the standing to plead certain claims, by pleading all the Jurisdictional codification(s) that would afford them access to the Remedial right(s) sought. Which had the DEFENDANT(s) not frustrated, interfered with and impeded PLAINTIFF(s) claim(s), then:

        (a) PLAINTIFF(s), not only would have Exhausted all their Administrative Remedies, without their Petitions taking a specific form, but PLAINTIFF(s) also would have met all the exception to the affirmative defense of Exhaustion and would have met all the Jurisdictional requirements of the Federal Tort Claims Act, where Once a prison has received notice of, and an opportunity to correct a problem, the prisoner has satisfied the purpose of the exhaustion requirement. See: Turley v. Rednour, 729 F.3d 645, 650 (7th Cir. 2013) Also see: Slapak v. United States, 2018 U.S. Dist. LEXIS #18749 (S.D. Ill. Feb. 2018);

        (b) Administrative Consideration of the possibility of correction and a record, or to not hinder the settlement process that a claim is supposed to initiate, would have aided the Existence of the PLAINTIFF(s) right to maintain the Action, unaffected by any

5

circumstances which will constitue a Bar to the Maintenance of the suit, while also equally affording PLAINTIFF(s) the opportunity and adequate ability to obtain the performance of all conditions precedent.

47.    On Information & Belief, the Merits of PLAINTIFF(s) Claim(s) rest upon the fact that it is by the DEFENDANT(s) own Action(s) in violation of PLAINTIFF CLARK's & PLAINTIFF HENDERSON's Right(s) that PLAINTIFF HENDERSON has Claim(s), which has arisen from the same Nucleus of Operative Fact(s), as the Claim(s) by PLAINTIFF CLARK and which exist in PLAINTIFF HENDERSON's own Interest, that are both of his persons and of his property, which are not limited to his Petition(s), or the Record(s) created by Unqualified Staff and/or DEFENDANT(s).
And also, not limited to his interest being Property that is required to be afforded equal protection of the Law(s) and that are required to Afford him and his persons equal protection of the Law(s) and Right of Access to the Court. Which he can not be disciplined in any manner for attempting to exercise that Right of Access to the Courts. See: Andrade v. Hauck, 452 F.2d 1071, 1072 (5th Cir. 1971).

48.    On Information & Belief, the Merits of PLAINTIFF(s) Claim(s) rest upon the fact that it is by the DEFENDANT(s) own Action(s) in violation of PLAINTIFF CLARK's & PLAINTIFF HENDERSON's Right(s) that PLAINTIFF CLARK has Claim(s), which has arisen from the same Nucleus of Operative Fact(s), as the Claim(s) by PLAINTIFF HENDERSON and which exist in PLAINTIFF CLARK's own Interest, that are both of his persons and of his property, which are not limited to his Petition(s), or the Record(s) created by Unqualified Staff and/or DEFENDANT(s).
And also, not limited to his interest being Property that is required to be afforded equal protection of the Law(s) and that are required to Afford him and his persons equal protection of the Law(s) and Right of Access to the Court. Which he can not be disciplined in any manner for attempting to exercise that Right of Access to the Courts. See: Andrade v. Hauck, 452 F.2d 1071, 1072 (5th Cir. 1971), as Cited by: Murphy v. Wheaton, 381 F.Supp. 1252 (N.D. Ill. Sept. 20, 1974).

49.    Paragraph(s) 1 through 48, are incoporated by reference as if separately stated in these Fact(s), Averment(s) and Claim(s) for Relief, set-forth below.
On Information & Belief, Record(s) exist that the Function(s) & Duties, required have otherwise been arbitrarily and capriciously vested in Unqualified Subordinate Staffmember(s) of the Bureau of Prisons, whether by redelegation of authority or otherwise.

50.    The said "Sovereign Citizen Classification", which includes, but is not limited to any non-published written and/or unwritten policies, classifications, or Blanket Customs that have occurred by any misapplication of policies, which has been wrongfully vested and/or capriciously and/or arbitrarily vested in unqualified Subordinate Staffmember(s).

51.    On Information & Belief, The U.S. Dep't of Justice and the Entire U.S. BUREAU OF PRISONS, operates on a Record System. The System of Record that BOP Operates on, will equally provide sufficient Evidence that can be readily ascertained to establish a prima facie case against each of the DEFENDANT(s) herein Named and any additional party, upon Discovery occurring in this case.

52.    On Information & Belief, each DEFENDANT herein named has an Identification Card, in addition to an access password, or passcode, that is specifically assigned to the said DEFENDANT, respectively, which is required to Access the Conputerized Database, thus all Communication(s) which exist upon SENTRY or otherwise have been recorded and can be readily located and acquired by review and/or audit.

53.    On Information & Belief, the following Recorded Emails can be located & acquired which are for the dates of February 25, 2019, February 27, 2019, the 18th, or 19th day of September for 2019 and March 06, 2020 through March 13, 2020.

54.        On Information & Belief, An Institutional Audit, at FCI-GREENVILLE is appropriate as such existing Record(s), which are material to the claim(s) stated herein, will set-forth a corresponding Pattern and practice, which establishes links that displays a showing that, where the actual corruption of one Staffmember implies personal influences and personal involvement of an another staffmember, so that neither staffmember reveals, or reports the Corruption of the other.

55.        On Information & Belief, the BOP and the staff and DEFENDANT(s) of FCI-GREENVILLE have operated a <u>Blanket Custom that serves as an Code of Silence and Exclusion of all written and Documentary Petition(s), that are Not submitted to Staff on a Department of Justice</u> Standard Form, or a prescribed Form, which includes PLAINTIFF(s) CLARK & HENDERSON attempting to submit their claim petition(s) by U.S. Mail, addressed to BOP Central Office, thus these action(s) constituted violations of the Right of Access to the Courts & equal protection.

       Where the BOP, its staff and the DEFENDANT(s), deliberately and maliciously do do not process these submitted petition(s)/other written notification of an incident, which equally deprives these submitted petition(s)/other written notification(s) the right to be afforded equal protection of the law(s), in violation of the right of Access to the Courts, right to substantial due process, equal protection rights and the right to petition for redress of grievances, under the 1st & 5th Amendment(s) to the U.S. Constitution.

56.        On Information & Belief, the BOP, its prisons and its staff have a Blanket policy or custom that Unqualified staff will be employed, despite the DEFENDANT(s)' knowledge, the Staff's knowledge & the BOP's knowledge that, no matter what procedures are put in place, those unqualified Employee(s) are still prone to Human Error and Behaviors that derive from being unqualified and incompetent and so, while being prone to incompetence, having such a policy, or custom is material to the competence of the BOP's prisons, which weighs heavily upon:

       (a) Adversely affecting the preservation of all right(s) that Inmates held in custody are to be afforded;

       (b) Adversely affecting unqualified employee(s) to have the Competence to carry out the control and management of the Federal prisons;

       (c) Adversely affecting a prisoner whom is then forced to rely completely upon those said unqualified staff, whom with respect to a prisoner's Right of Access to the Courts, is basically a fiduciary and/or Power of Attorney for the interest a prisoner has in protecting all his other rights, which makes a staffmember's incompetence and/or which makes a staffmember's lack of qualifications, material to a prisoner's Right of Access to the Courts and also a prisoners interest in protecting all his other rights;

       (d) Adversely affecting a prisoner whom must rely completely upon the said unqualified staff while subjected <u>to things that are not ordinary incident(s) of prison life, such as COVID-19 and being equally forced to rely completely upon Unqualified Staff</u>;

       (e) Adversely affecting a prisoner's right of Access to the Court(s);

       (f) Adversely affecting a prisoner's right to petition, without need that the submitted petition take any specific form, See: <u>Denton v. United States</u>, 440 Fed. Appx. 498, (7th Cir. 2011) citing: <u>Palay v. United States</u>, 349 F.3d 418, 425-26 (7th Cir. 2003);

       (g) Adversely affecting the Veracity and the reliability of the Record(s) that are Created by the said Unqualified Staff whom are of incompetence and/or whom are of gross incompetence, thus such in return equally adversely affects a prisoner whom must rely completely upon the said created Record(s), at no force of law against the unqualified staff whom created the record(s), constituting a lack of equitable consequences.

       Where all this is material in respect to a prisoner being subjected to things that are not ordinary incidents of prison life, such COVID-19 and equally being forced to rely completely upon the said Unqualified Staff and the Fraudulent Record(s), False Record(s)

or the deliberately erroneous and maliciously inaccurate Record(s) that they create.

Equally, raising 'Dangerous Implications', such as the present circumstances where the Record is necessary in order to secure an inmate's health and safety, thus being material like in a case related to COVID-19.

57. On Information & Belief, the Right of Access to the Courts, protects the PLAINTIFF(s)', First Amendment Right to Petition for redress of grievances and therefore, the Right of Access to the Courts, theoretically protects all the other Right(s) of the PLAINTIFF(s).

58. On Information & Belief, whether or not the 5th Amendment Right of Access to the Courts has been evoked and has resulted in protecting all the other Right(s), the First Amendment Petition, does not need to take a specific form.
See: Bridges v. Gilbert, 557 F.3d 541, 554-55 (7th Cir. 2009).

However, the said 1st Amendment Petition, equally constitutes an exercising of Administrative Remedies, which when PLAINTIFF(s) have exercised, or attempted to exercise Administrative remedies under any non-specific form, the use and enjoyment of Administrative Remedies exists to serve an individual's interest, thus Administrative Remedies Weighs heavily in a perservative of all Right(s), especially where:

(a) the Administrative Body is shown to be bias;

(b) the Administrative Body is shown to have otherwise predetermined the issue before it;

(c) the Administrative Body is shown to be in absence of power to grant effective relief;

(d) the Administrative Body is shown to have the necessary Authority, however its competence to carry out the Control and Management of the Federal prisons is in excess of the effectiveness that Constitutional Standard(s), require especially with respect to those things that are not ordinary incident(s) of Prison Life, such COVID-19 & a prisoner being forced to rely completely upon Unqualified Staff, whether that said staff has job experience, or not;

(e) the Administrative Body is a Bureau whom is shown to have the necessary Authority, however does not bring to bear any Special expertise to Carry out the Control & Management, under certain types of issue(s) presented for resolution. Especially with respect to Issue(s) that are not Ordinary Incident(s) of Prison Life, such as COVID-19 and a prisoner being forced to rely completely upon unqualified staff.

59. PLAINTIFF(s) have individual interest(s) to not suffer Undue Prejudice of their Rights, or injuries, especially their 5th Amendment Right of Access to the Courts. Where in absence of the uninhibited use and enjoyment of Administrative Remedies the PLAINTIFF(s) will further suffer Undue prejudice and Injuries than they already have and will continue to suffer Undue prejudice and Injuries, upon all their other right(s), unless relief sought is afforded & granted.

60. Administrative consideration of the possibility of corrective action and a Record would have aided the PLAINTIFF(s) in:

(a) measuring liability and determining the Strengths and weaknesses of each available cause of action, not limited to the extent of damages, but all remedial right(s);

(b) the performance of all conditions precedent, for example see: 28 CFR §14.1 through §14.11;

(c) the existence of their right to maintain the Action, unaffected by any circumstances, which will constitute a Bar to the maintenance of the suit. Especially where, the fact that, a petition does not need to take a specific form, thus upon the performance

8

of all conditions precedent, the petition serves the purpose of protecting a litigant's efficiency in his legal proceeding(s), as the Right to petition is a principle that is applied with special force when the fact that Petition(s) are being deprived their Rights to petition for Redress and/or when Peitioner(s) are being Retaliated against, since such Correlatively promotes and encourages Employee(s) of the BUREAU OF PRISONS to effectively disregard the substantial right(s) of prisoners, in a manner that is Malicious, capricious and blantant. And for this very reason it is because numerous violations of Inmates' Right(s) exist already, which has occurred regardless of the procedures put in place by the BOP, like those violations suffered by PLAINTIFF(s) CLARK & HENDERSON, that the PLAINTIFF(s), herein bring this Action.

61.          On Information & Belief, Unqualified staff equates Ignorance of the Law and Ignorance of the Right(s) of all Inmates, thus upon the Authorative party being ignorant, such can only equate the foreseeable risk of harm that the Inmates either will Remain Ignorant, or will have his existing Ignorance of the law and his rights, become further increased, due to the Unqualified staff being the party that the Inmate is being forced to completely rely upon and/or is entitled to rely upon.

62.          On Information & Belief, PLAINTIFF(s) CLARK & HENDERSON have suffered Injury, damage and/or harm, which had been a foreseeable risk, in that they have had their Right to petition, without the said petition needing to take a specific form. Resulting in PLAINTIFF(s) CLARK & HENDERSON suffering injury, damage and/or harm, which had been a foreseeable risk, where the said Injury, damage and/or harm had been PLAINTIFF(s) having their Right of Action Interfered with, frustrated and/or impeded, by the DEFENDANT(s)' Action(s)/Inaction(s), which has also Prejudiced the PLAINTIFF(s) right to maintain those Claim(s) for relief in this current action, upon being affected by the circumstances, which will constitute a Bar to the maintenance of all the claim(s), material to the set of fact(s) of this Suit. Further preventing PLAINTIFF(s) from being afforded all remedial rights which would have been sought, as redress for the Infringement of their Legal Rights.

63.          On Information & Belief, had the PLAINTIFF(s) Not had their Right of Access to the Courts and their rights to petition without the said petition needing to take a specific form, frustrated, interfered with, or impeded then PLAINTIFF(s) could have relied upon these same operative facts in their administrative remedy Petition(s), could have relied upon these same operative facts in their legal proceedings without a tribunal, or court and then also relied upon these same operative facts either in a State Court proceeding, or a Federal Court proceeding, instead of being forced to file this suit in order to attempt to protect all their other Right(s). However, by pleading these facts now will constitute a Bar to all Remedial rights and claims for relief that can not be afforded any relief, under the Jurisdiction setforth herein, despite the Jurisdiction pleaded herein, being the only Jurisdiction available to the PLAINTIFF(s) to setforth in this Court.

64.          On Information & Belief, the Essentials of a Right of Action are:

(a) A good Cause of Action;

(b) The performance of All Conditions Precedent; and

(c) The existence of the Right to maintain the Action, in that the Plaintiff is unaffected by circumstances which will constitute a Bar to the Maintenance of the Suit, or its Claim(s). See: 1 AM J2d Actions §46.

65.          On Information & Belief, PLAINTIFF CLARK arrived at FCI-GREENVILLE, in the Month of June for 2018.

66.          On Information & Belief, PLAINTIFF HENDERSON arrived at FCI-GREENVILLE, around September 12, 2019.

9

67. The Education Building, where the Law Library Room and Typewriter Room is located, remains Open Six Days per week, usually from Sunday through Friday.

68. On Monday through Friday, there are Two Session period(s) per day. One in the Morning, usually from about 8:45 am, or 9am, until about 10:15 am. And One Session in the Afternoon, usually from about 1:45 pm, or 2 pm until about 3:20 pm, however the Morning Session period is scheduled for 8:30 am until about 10:30 am. And the Afternoon Session period is scheduled for 1:30 pm until 3:30 pm.

69. Then On Tuesday and thursday, in addition to the Two Session period(s) per day, there is a third session period that exist from 5:30 pm until about 8:15 pm, which comes with some exception(s).

The Dinner meal Exception, requires any inmate whom decides to take the first Movement at 5:30 to the Education building, to also waive his Dinner Meal completely. And any Inmate attending his Dinner Meal, must wait for the Outgoing Movement from the Housing Unit to Education, after all Dinner Meal Movement(s) have been officially Closed, which usually occurs around 6:15 pm, or 6:45 pm.

70. Lastly, On Sunday there is a Morning Session period for Education from about 7:40 am, or 7:50 am until about 9:15 am. But is Scheduled for 7:30 am until about 9:20 am. Then the Afternoon Session period is around 12:45 am, or 1:15 pm until about 3:25 pm, which comes with some exception(s).

Inmates can waive their Lunch Meal, by signing up for Education Outcount to remain in the Education Building from the 9:15 am, scheduled Recall through the Lunch Meal, until the Last Lunch Movement is Closed at around 12:45 am, or 1:15 pm.

Or Inmates can waive their Lunch Meal, without signing up for Education Outcount and remain in the Education Building until the last Lunch Movement is Closed, by taking the Outgoing Movement from the Housing Unit(s) at about 10:15 am.

71. At all Material times, the Law Computer(s) and about Nine Typewriter(s) which must be shared by the entire General inmate population of FCI-GREENVILLE, are for the most part the few law library materials that exist, in addition to the Tiny Law Library Room that contains books and other materials such as court addresses and such.

Still, please note that the Education Building, which is Huge is where the Tiny Law Library Room, typewriter room and law computer(s) are located at FCI-GREENVILLE.

72. Since his arrival in June of 2018, by the month of October of 2018 PLAINTIFF CLARK had became known amongst majority of the Entire Inmate population to have spent each of the six days per week and almost every available hour in the Education Building, where the Law Library materials are Located. And PLAINTIFF CLARK has not been known for engaging in any prohibited acts, not authorized by Inmates.

73. Majority of the Entire Inmate population at FCI-GREENVILLE knows PLAINTIFF CLARK and will testify that, as long as they have known of PLAINTIFF CLARK, they know him for nothing else, except spending six day(s0 a week in the Education building, where the Law library materials are located, and that PLAINTIFF CLARK does not engage in prohibited acts. Furthermore, they will also testify that all seven days of the week PLAINTIFF CLARK is involved with some type of Law studies, while in the Housing Unit. While being known by the majority of the entire Inmate population for nothing else, other than engaging in some form of law studies, for the most part, and not engaging in any BOP Prohibited Act(s).

74. By the Month of March of 2019, after the Civil Case No. #3:19-cv-00297-SMY had been already Filed, PLAINTIFF CLARK was further known amongst the Majority of the Entire Prison Staff, at GREENVILLE, as having no interation(s) with staff, or anything else occurring at FCI-GREENVILLE that did not concern his legal rights and legal work, however PLAINTIFF CLARK was somehow still labeled a trouble-maker, due to him exercising his Right to Petition, without the petition needing to take any specific form, thus the DEFENDANT(s) sought to have PLAINTIFF CLARK Transferred, without legal justification.

On Information & Belief, any BOP Prohibited Act Rule between #300 and #399, are minor violation(s), which do not Warrant any Segregation in the SHU, do not warrant any said Segregation for a SIS Investigation and do not warrant PLAINTIFF CLARK, or any other Inmate to remain in Segregation in the SHU until after a Hearing by U.D.C., occurs, however PLAINTIFF CLARK had repeatedly been forced to remain in the SHU pending minor violations.

BOP Prohibited Act Rules for Insolence to Staff, or contraband upon paper materials related to allegedly to the U.C.C., UNIFORM COMMERCIAL CODE, definitely do not warrant the above actions to occur as stated.

75.     Each date that Corresponds with PLAINTIFF CLARK being placed in the SHU and equally corresponds with PLAINTIFF CLARK sending a Computerized/Electronic Email to Staff issuing a Petition, complaining about Staff and the conditions of Confinement, it must be noted that PLAINTIFF CLARK's placement in the SHU only occurred after the Email Petition had been already sent to Staff, however no Incident Report has ever been issued under such circumstances, prior to DEFENDANT(s) having already being in receipt of a Email.

76.     All three Incident Report violations that had been issued to PLAINTIFF CLARK prior to the date of 18th, or 19th day of September for 2019, had been all minor violations and only due to the entire Housing Unit 2-A inmate population witnessing DEFENDANT PATTERSON, openly stating "Shut up" to PLAINTIFF CLARK, repeatedly that another false violation had not been fraudulently issued to PLAINTIFF CLARK.

All violations that CLARK has been issued has been false and in retaliation for the verbal, or written petitions issued by PLAINTIFF CLARK.

77.     On Information & Belief, it is Against this Background that raises the question of What legal justification would provide Motives for the Action(s) of the DEFENDANT(s), which would justify and provide immunity for their actions?

78.     PLAINTIFF HENDERSON, spends six days per week in Education with PLAINTIFF CLARK since his arrival around September 12, 2019 and majority of the Inmate General population will testify to that. Prior to the false violations that DEFENDANT(s) had issued on July 13, 2020, PLAINTIFF HENDERSON has no other violations of Rule, except that specific one.

Therefore, against this Background it raises the question of What legal justification would provide Motives for the Action(s) of the DEFENDANT(s), which would justify and provide immunity for their action(s)?

79.     Since PLAINTIFF CLARK's arrival at FCI-GREENVILLE, only One of the Submitted Petitions, which need not take a specific form, had been allowed to be submitted.

However, once submitted to Non-Defendant Mr. Fitzpatrick, he then in turn handed it over to SIS and DEFENDANT HODGES, immediately ordered PLAINTIFF CLARK to the Captain's Office and issued PLAINTIFF CLARK a retaliatory threat that if he continued to submit any complaints not upon Federally prescribed Institutional forms, he would be Classified as a Sovereign Citizen and Transferred to a SMU program.

PLAINTIFF CLARK repeated informed DEFENDANT HODGES that he was not a Sovereign Citizen and would not be threatened, while asking her to provide him with the Policy, procedure, or rule that prohibited PLAINTIFF CLARK from submitting Petitions that need not take a specific form and was told that SIS does not have to provide those items to him.

80.     On Information & Belief, DEFENDANT(s) WILLIAMS, WERLICH, SANTIAGO, CHEEKS, PATTERSON, ROBINSON, SERIO, PEREZ, DUGDALE, SCHMIDT, HODGES, SEELY, ALLEN, JONES & FITZPATRICK, have all reached agreement(s) to deprive PLAINTIFF(s) CLARK & HENDERSON their Rights to issue Petitions, which need not take a specific form, from the dates of the 18th or 19th day of September for 2019, until July 31, 2020 and still to this very date.

81.     With DEFENDANT WILLIAMS knowledge & consent, or at his directive PLAINTIFF(s) CLARK & HENDERSON had their Written petition(s) that stated, on around March 13, 2020 PLAINTIFF HENDERSON had been placed on a fraudulent SIS Investigation and that PLAINTIFF

11

CLARK had been fraudulently added to that SIS Investigation of PLAINTIFF HENDERSON & a Book Titled, REDEMPTION MANUAL 5.0 Book Three Operating Sovereign. It also stated that this incident occurred at FCI-GREENVILLE while stating that, $30,000, in damages, or offer of settlement for damages must be paid to each PLAINTIFF CLARK & PLAINTIFF HENDERSON for the claims of libel & defamation of character was to be paid, upon DEFENDANT(s) WILLIAMS, PATTERSON, SANTIAGO, CHEEKS, SERIO, HODGES, SCHMIDT & ROBINSON, whom must each pay the $30,000 amount to each PLAINTIFF CLARK & PLAINTIFF HENDERSON, severally.

This Written petition had been sent by U.S. MAIL to NORTH CENTRAL REGIONAL OFFICE, in kansas city, Kansas and also handed to each of the above named DEFENDANT(s), equally noticing them that they had 7 days from receipt to respond, request a hearing be scheduled, request one extension of time by certified mail and to both enter a not guilty or guilty plea to the charges and state whether their action(s) had occurred in the scope of their employment, or had been Ultra vires acts and conduct.

82. The mailed envelopes had been unlawfully seized from the Outgoing U.S. Mail, along with the other mailed envelopes that had been addressed to Central Office for the BOP, 320 First Street NW., Washington, DC 20534, thus neither those U.S. mail envelopes addressed to Central office/Office of General Counsel, nor those envelopes addressed to North Central Regional Office, 4th & state ave., 8th Fl.--Tower II, Kansas City, Ks. 66101-2492 had made it to the intended mail recipient, after being seized from the FCI-GREENVILLE, institutional mail.

83. With DEFENDANT SANTIAGO knowledge & consent, the same exact event occurred, as clearly stated in paragraph(s) # 80, # 81, & # 82, thus DEFENDANT SANTIAGO provided a substantial assistance that contributed to PLAINTIFF(s) CLARK & HENDERSON being deprived their 1st & 5th Amendment rights, with respect to the said claims of Libel & Defamation of Character.

84. With DEFENDANT CHEEKS knowledge & consent, the same exact event occurred, as clearly stated in paragraph(s) # 80, # 81,# 82 & #114, thus DEFENDANT CHEEKS provided a substantial assistance that contributed to PLAINTIFF(s) CLARK & HENDERSON being deprived their 1st & 5th Amendment rights, with respect to the said claims of Libel & Defamation of Character.

85. With DEFENDANT PATTERSON knowledge & consent, the same exact event occurred, as clearly stated in paragraph(s) # 80 through # 82, thus DEFENDANT PATTERSON provided a substantial assistance that contributed to PLAINTIFF(s) CLARK & HENDERSON being deprived their 1st & 5th Amendment rights, with respect to the said claims of Libel & Defamation of Character.

86. With DEFENDANT ROBINSON knowledge & consent, the same exact event occurred, as clearly stated in paragraph(s) # 80 through # 82, thus DEFENDANT ROBINSON provided a substantial assistance that contributed to PLAINTIFF(s) CLARK & HENDERSON being deprived their 1st & 5th Amendment rights, with respect to the said claims of Libel & Defamation of Character.

87. With DEFENDANT SERIO knowledge & consent, the same exact event occurred, as clearly stated in paragraph(s) # 80 through # 82, thus DEFENDANT SERIO provided a substantial assistance that contributed to PLAINTIFF(s) CLARK & HENDERSON being deprived their 1st & 5th Amendment rights, with respect to the said claims of Libel & Defamation of Character.

88. With DEFENDANT PEREZ knowledge & consent, the same exact event occurred, as clearly stated in paragraph(s) # 80 through # 82, thus DEFENDANT PEREZ provided a substantial assistance that contributed to PLAINTIFF(s) CLARK & HENDERSON being deprived their 1st & 5th Amendment rights, with respect to the said claims of Libel & Defamation of Character.

89.        With DEFENDANT DUGDALE knowledge & consent, the same exact event occurred, as clearly stated in paragraph(s) # 80 through #82 , thus DEFENDANT DUGDALE provided a substantial assistance that contributed to PLAINTIFF(s) CLARK & HENDERSON being deprived their 1st & 5th Amendment rights, with respect to the said claims of Libel & Defamation of Character.

90.        With DEFENDANT SCHMIDT knowledge & consent, the same exact event occurred, as clearly stated in paragraph(s) #80  through # 82, thus DEFENDANT SCHMIDT provided a substantial assistance that contributed to PLAINTIFF(s) CLARK & HENDERSON being deprived their 1st & 5th Amendment rights, with respect to the said claims of Libel & Defamation of Character.

91.        With DEFENDANT SEELY knowledge & consent, the same exact event occurred, as clearly stated in paragraph(s) # 80 through #82 , thus DEFENDANT SEELY Provided a substantial assistance that contributed to PLAINTIFF(s) CLARK & HENDERSON being deprived their 1st & 5th Amendment rights, with respect to the said claims of Libel & Defamation of Character.

92.        With DEFENDANT FITZPATRICK knowledge & consent, the same exact event occurred, as clearly stated in paragraph(s) # 80 through #82 , thus DEFENDANT FITZPATRICK provided a substantial assistance that contributed to PLAINTIFF(s) CLARK & HENDERSON being deprived their 1st & 5th Amendment rights, with respect to the said claims of Libel & Defamation of Character.

93.        At DEFENDANT WERLICH Directive and/or with his knowledge & consent, DEFENDANT(s) FITZPATRICK, ALLEN & JONES used their authority as Mail room staff to provide a substantial assistance that contributed to PLAINTIFF(s) CLARK & HENDERSON being deprived their 1st & 5th Amendment rights, with respect to the said claims of Libel & Defamation of Character, along with all the other Petitions, that PLAINTIFF CLARK & HENDERSON had submitted by U.S. Mail, which had also been unlawfully seized from the Outgoing United State Mail.

94.        On Information & Belief, DEFENDANT(s) WERLICH, PATTERSON, SERIO & DUGDALE, contributed to the unlawful siezure of PLAINTIFF(s) CLARK & HENDERSON Outgoing United States Mail, where either at their Directive, or with their knowledge and consent, DEFENDANT(s) FITZPATRICK, ALLEN & JONES used their authority as Mailroom staff to seize PLAINTIFF(s) CLARK & HENDERSON Outgoing U.S. Mail around the date(s) of October for 2019, November for 2019 and December for 2019 PLAINTIFF(s) CLARK & HENDERSON formatted about twenty-four Written Petitions, which need not take a specific form, which each Written Petition set-forth that an incident had Occurred at FCI-GREEENVILLE. Out of the total twenty-four petitions Twelve of them had named DEFENDANT(s) WERLICH, PATTERSON, SERIO, DUGDALE, HUSTON & PEREZ, where for the Month of October,. Four written Petitions concerned the 18th, or 19th day of September for 2019. For the Month of November, Four written Petitions concerned complaint(s) about PLAINTIFF HENDERSON being held as an informant, under forcible restraints of his liberty and PLAINTIFF CLARK being held as a subject of a fraudulent SIS Investigation under forcible restraints of his liberty. Both PLAINTIFF(s) CLARK & HENDERSON, alleged cruel and unusual punishments. For the Month of December for 2019, those last four written petitions alleged the same claims, had been ongoing.

95.        On Information & Belief, the last twelve petitions which remained alleged the unlawful siezure of their U.S. Mail for the months of October, November & December for 2019, along with further violations of their Right of Access to the court and equal protection violations, along with first amendment mail and retaliation claims.

96.        On Information & Belief, DEFENDANT(s) ROBINSON, SEELY & WERLICH maliciously failed to process written petitions submitted to them, by PLAINTIFF CLARK & HENDERSON, which concerned the same claims and complaints as described in paragraph(s) #45 through #209.

13

97.    Paragraph(s) # 1 through # 96, are incorporated by reference as if separately stated, where On Information & Belief, the action(s) of all DEFENDANT(s) named equally provided a substantial assistance that contributed to the prejudice and injuries suffered by PLAINTIFF(s) CLARK & HENDERSON, aging in an ongoing manner which constitutes damage to their property in violation of their rights of Access to the courts and rights to petition.

98.    Paragraph(s) # 1 through # 97, are incorporated by reference as if separately stated, where On Information & Belief, the action(s) of all DEFENDANT(s) named equally constituted violations of PLAINTIFF(s) CLARK's & HENDERSON's 1st & 5th Amendment Rights of Access to the Courts, to petition for redress and to be afforded equal protection of the laws and privileges with respect to their persons and their property, as stated in paragraph(s) #98 through #336, where further harm, injury and/or damage exists, as the PLAINTIFF(s) are now barred from using these same set of fact(s) to obtain relief that would have otherwise been available to them had the DEFENDANT(s) not frustrated, interfered with and/or impeded their claims and legal process, in a capricious, oppressive and an otherwise malicious manner.

99.    On Information & Belief, DEFENDANT(s) WERLICH, PATTERSON, DUGDALE & SERIO, Took a Racially motivated course of Action, specifically, as White decision makers, which occurred with each DEFENDANT(s)' knowledge & consent, where the said Racially motivated course of Action had been specifically been against African American Prisoner(s), as the Identifiable Group.

100.    On Information & Belief, The Racially motivated course of action that DEFENDANT(s) WERLICH, PATTERSON, DUGDALE & SERIO, as White Decision makers had took that was specifically against the Identifiable Group of Prisoner(s) whom were African American, specifically, had occurred under the premise that Afircan American Prisoner(s) are Niggar Slaves whom must obey their White Master(s), because one way, or the other by the other actions took the African American prisoner will be conditioned by the DEFENDANT(s) to submit themselves to obey their White Master(s), or until the African American Prisoners submit themselves they will suffer punitive punishments, punitive discipline, and/or will suffer punitive retaliation, as described in paragraph(s) #99-#102 And #155 - #173.

101.    On Information & Belief, DEFENDANT(s) WERLICH, PATTERSON, DUGDALE & SERIO, as White Decision makers the DEFENDANT(s) with knowledge and consent specifically took this said Racially motivated course of action to Coerce, threaten, induce and otherwise Intimidate African American Prisoners whom had been attempting to petition for redress and attempting to gain access to the courts, and therefore specifically oppress African American Prisoners to stop exercising their Constitutional rights, specifically where African american prisoners must not challenge, or be given opportunities to challenge their white master, but instead must only submit themselves to their White Master(s).

102.    On Information & Belief, DEFENDANT(s) WERLICH, PATTERSON, DUGDALE & SERIO without legal justification had maliciously & capriciously used their Authority and other actions, as Decision makers because of the loss of the rights to petition, rights of Access to the courts and rights to be afforded equal protection of the laws and privileges which equally constituted Injury, harm and damage that the DEFEANDANT(s) Sought to specifically make African American Prisoners suffer.
    And therefore, purposeful discrimination against PLAINTIFF(s) CLARK & HENDERSON in violation of the 1st & 5th Amendment(s) occurred which resulted from the DEFENDANT(s) committing the course of actions described in paragraph(s) #99-#103 ; #204.

103.    On Information & Belief, "SHU Timeout(s)", both Derive and are rooted upon the use of the SHU, without legal Justification & in absence of any penological interest, under the premise that African American Prisoner(s)/Inmates, are Niggar Slaves whom must obey their White Master(s), or suffer, which is in excess of the power(s) and authority of the Sovereign and equally constitutes Purposeful Discrimination in violation of the 1st & 5th Amendment(s) to the U.S. CONSTITUTION.

14

104.         On Information & Belief, DEFENDANT WERLICH is responsible as the Warden for the Protection, safety, health & custody of every inmate assigned to FCI-GREENVILLE, which requires him to issue his Approval, Signature and written reports, while authorizing any Transfer, SIS Investigation, SIS Informant Status & SHU Confinement of every FCI-GREENVILLE Inmate.

105.         On Information & Belief, DEFENDANT WERLICH had been a Creator of the Known Policy, Custom/Culture called "SHU Timeout(s) & at his directive, or with his knowledge & consent PLAINTIFF(s) CLARK & HENDERSON had been subjected to the Injuries, Harm & Damage that African American Inmates suffer from "SHU Timeout(s)".

106.         On Information & Belief, DEFENDANT WERLICH provided substantial assistance which contributed to PLAINTIFF(s) CLARK & HENDERSON suffering unlawful Restraints and/or punishments, by being a Creator of SHU Timeout(s). And by PLAINTIFF CLARK being unlawfully held in the SHU, without legal justification and in a Malicious, Oppressive & Capricious manner from the 18th, or 19th, the 19th, the 20th, the 21st, the 22nd, the 23rd & the 24th day of September, for 2019, upon PLAINTIFF CLARK being Subjected to SHU Timeout(s).

107.         On Information & Belief, DEFENDANT WERLICH provided substantial assistance which contributed to PLAINTIFF HENDERSON being unlawfully held in the SHU, without legal justification and in a Malicious, Oppressive & Capricious manner on the 18th, or 19th day of September for 2019, upon PLAINTIFF HENDERSON being Subjected to SHU Timeout(s).

108.         On Information & Belief, DEFENDANT WERLICH provided substantial assistance which contributed to PLAINTIFF HENDERSON being unlawfully held as an Informant under forcible restraint(s) from the 18th, or 19th of September for 2019 until March 13, 2020 without legal justification and in a Malicious, Oppressive & Capricious manner, upon being subjected to SHU Timeout(s), which led to --- all violations of PLAINTIFF HENDERSON's Right(s) sharing the same Common Nucleus of Operative Fact(s) for all claims of Purposeful Racist Discrimation, §1985 Conspiracy, §1986 as a result of §1985(3), Intentional Infliction of Emotional Distress, Battery, Equal Protection Right(s) to Petition that need not take a specific form, Assault and Due Process/Federal Law Right(s) under Code of Federal Regulation Section(s), mentioned in Paragraph(s) # 45, # 60, # 163 - # 168 And # 200 through # 201.

109.         On Information & Belief, DEFENDANT WERLICH provided substantial assistance which contributed to PLAINTIFF CLARK being unlawfully held by SIS Investigation under forcible restraint(s) from the 24th, or 25th of September for 2019 until March 13, 2020, without legal justification and in a Malicious, Oppressive & Capricious manner, upon being subjected to SHU Timeout(s), which led to all violations of PLAINTIFF CLARK's Right(s) sharing the same Common Nucleus of Operative Fact(s) for all claims of Purposeful Racist Discrimination, §1985 Conspiracy, §1986 as a result of §1985(3), Retaliatory Conspiracy to Transfer PLAINTIFF CLARK, Intentional Infliction of Emotional Distress, Battery, Equal Protection Right(s) to Petition that need not take a specific form, Assault and DUE PROCESS/Federal Law Right(s) under Code of Federal Regulation Section(s), mentioned in Paragraph(s) # 45, # 60, # 163 through # 168 And # 200 through # 201.

110.         On Information & Belief, DEFENDANT WERLICH provided substantial assistance which contributed to PLAINTIFF CLARK being unlawfully retaliated against due to him have issued Written Petition(s) that need not take a specific form, as described in paragraphs # 53, # 74, # 79 through # 80 And # 198 through # 199.

111.         On Information & Belief, DEFENDANT(s) SANTIAGO & CHEEKS are responsible as Associate Warden(s) for the Protection, safety, health & custody of every inmate assigned to FCI-GREENVILLE, which requires them to issue their Approval, Signature and Written reports, while authorizing any Transfer, SIS Investigation, SIS Informant Status & SHU Confinement of every FCI-GREENVILLE Inmate.

112.         On Information & Belief, DEFENDANT(s) SANTIAGO & CHEEKS with their Knowledge & Consent provided substantial assistance which contributed to PLAINTIFF(s) CLARK &

15

HENDERSON suffering a loss of rights to petition that need not take a specific form & a loss of rights of Access to the Court(s), as DEFENDANT(s) SANTIAGO & CHEEKS have been repeatedly and consistently issue written notice(s), which had clearly informed them that their participation in a failure to take other action(s) had directly, or indirectly Ensured unlawful violation(s) of the Right(s) of PLAINTIFF(s) CLARK & HENDERSON occurred, as described in paragraph(s) #111 through #114, #155 through #173, #180 through #183 And #185 through #219.

113.    On Information & Belief, DEFENDANT(s) SANTIAGO & CHEEKS with their knowledge & Consent provided substantial assistance which contributed to the Conspiracy to issue PLAINTIFF CLARK a Retaliatory Transfer, where each issued their Signature(s) upon each of the numerous Transfer Document(s) submitted between the dates of April 17, 2020 & July 31, 2020.

114.    On Information & Belief, DEFENDANT(s) SANTIAGO & CHEEKS with their knowledge & Consent provided substantial assistance which contributed to the Transfer Document(s) being submitted for PLAINTIFF(s) CLARK & HENDERSON in violation of Federal rights, which are mentioned in Paragraph(s) # 200 And # 201.
    DEFENDANT(s) SANTIAGO & CHEEKS not only issued their signature upon the said Transfer Document(s), but also displayed deliberate and reckless disregard in a Malicious, Oppressive, Capricious and Retaliatory manner for the Notices issued by PLAINTIFF CLARK & PLAINTIFF HENDERSON upon their Once per week, or Twice per week SHU Attendance where at the Conclusion of every SHU Meeting, or prior to every SHU Meeting the DEFENDANT(s) made walks around each walk and in an ongoing manner consistently stated that they received PLAINTIFF(s) CLARK & HENDERSON Written Notice(s), yet still failed to take other action(s) to remedy, or prevent the violation of rights that occurred from March 13, 2020 until July 31, 2020, as stated in paragraph(s) #180 through #183 And #185 through #219.

115.    On Information & Belief, DEFENDANT PATTERSON, as the Captain is responsible for the Protection, safety, health & custody of every inmate assigned to FCI-GREENVILLE, which requires him to issue his Approval, Signature and Written reports, while authorizing any Transfer, SIS Investigation, SIS Informant Status & SHU Confinement of every Inmate of FCI-GREENVILLE.

116.    On Information & Belief, DEFENDANT PATTERSON had been a Creator of the Known Policy, Custom/Culture called "SHU Timeout(s)" & at his directive, or with his knowledge & consent PLAINTIFF(s) CLARK & HENDERSON had been subjected to the Injuries, Harm & Damage that African American Inmates suffer from "SHU Timeout(s)".

117.    On Information & Belief, DEFENDANT PATTERSON, provided substantial assistance which contributed to PLAINTIFF(s) CLARK & HENDERSON suffering unlawful Restraints and/or punishments, by being a Creator of SHU Timout(s). And by PLAINTIFF CLARK being unlawfully held in the SHU, without legal justification and in a Malicious, Oppressive & Capricious manner from the 18th, or 19th, the 19th, the 20th, the 21st, the 22nd, the 23rd & the 24th day of September, for 2019 upon PLAINTIFF CLARK being Subjected to SHU Timeout(s).

118.    On Information & Belief, DEFENDANT PATTERSON had been a Creator of the known Policy, Custom/Culture called "SHU Timeout(s)" & at his directive, or with his knowledge & consent DEFENDANT PATTERSON entered the Captain's Office & Openly stated to PLAINTIFF HENDERSON, "You are gonna be our Niggar Slave in one way, or the other. So, we can either take you to the SHU until you Agree to Operate as our informant against CLARK, or you can be the Niggar Slave that we planned for you to be and jurst agree right now to operate as our Informant. Either way we are still taking your ass to the SHU...
    But we are keeping CLARK on a SHU Timeout all weekend until tuesday, so CLARK Learns that when his White Master tells his Niggar Slave to shut up, he better shut up, immediately."

119.    On Information & Belief, DEFENDANT PATTERSON, provided substantial assistance which contributed to PLAINTIFF(s) CLARK & HENDERSON suffering unlawful Restraints and/or punishments, by PLAINTIFF HENDERSON being unlawfully held in the SHU, without legal

16

justification and in a Malicious, Oppressive & Capricious manner on the 18th, or the 19th day of September for 2019 & also where PLAINTIFF HENDERSON had been held as an Informant under forcible restraint(s) and/or punishments from September 18th, or 19th for 2019 until March 13, 2020, upon PLAINTIFF HENDERSON being Subjected to SHU Timeout(s).

120.    On Information & Belief, with DEFENDANT PATTERSON's Knowledge & consent he provided substantial assistance which contributed to the Transfer Document(s) being submitted for PLAINTIFF(s) CLARK & HENDERSON in violation of Federal right(s), which are mentioned in Paragraph(s) #200 And #201.

DEFENDANT PATTERSON not only issued his signature upon the said Transfer Document(s), but also displayed deliberate and reckless disregard in a Malicious, Oppressive & Capricious, or otherwise Relitaliatory manner, as described in Paragraph(s) #99, #100, #101 through #103, #115 through #121 And #157 through #162.

121.    On Information & Belief, DEFENDANT PATTERSON with his knowledge & consent provided substantial assistance which contributed to the Conspiracy to issue PLAINTIFF CLARK a Retaliatory Transfer, where he issued his Signature(s) upon each of the numerous Transfer Document(s) submitted between the dates of April 17, 2020 & July 31, 2020 and used his Authority in ensuring that other DEFENDANT(s) failed to take other action(s) to report the federal rights violations committed by DEFENDANT(s) WERLICH, WILLIAMS, CHEEKS, SANTIAGO, ROBINSON, HUSTON, SEELY, SERIO, SCHMIDT, PEREZ, HERNANDEZ, FITZPATRICK, ALLEN, JONES & DUGDALE, upon him issuing his influence as Captain.

122.    On Information & Belief, DEFENDANT ROBINSON, as Function Manager is responsible for the Protection, safety, health & classification of every inmate assigned to Housing unit 1 & 2, at FCI-GREENVILLE, which requires her to issue her Approval, Signature and written reports, while authorizing Classification, any Transfer(s), as linked to any SIS Investigation, any Informant Status & any SHU Confinement of any Inmate of FCI-GREENVILLE assigned to her Housing Unit(s).

123.    On Information & Belief, DEFENDANT ROBINSON, was required to review any said SIS Investigation, or SIS Informant Status prior to submitting any Transfer Document(s), processed by herself, or DEFENDANT HUSTON. And therefore, DEFENDANT ROBINSON had been fully with knowledge that violation of PLAINTIFF CLARK's & PLAINTIFF HENDERSON's Federal Rights had been committed in order to further all transfer(s) submitted from April 17, 2020 until July 13, 2020.

124.    On Information & Belief, DEFENDANT ROBINSON, had obtained the knowledge & consent of all other DEFENDANT(s) prior to submitting the numerous Transfer Document(s), which she had processed and therefore all other DEFENDANT(s) had been with full knowledge that violation of PLAINTIFF CLARK's & PLAINTIFF HENDERSON's Federal Rights had been committed in furtherance of all transfer(s) submitted from April 17, 2020 until July 31, 2020 for PLAINTIFF(s) CLARK & HENDERSON, where such action occurred as linked to other action(s) by DEFENDANT PATTERSON upon him issuing his influence as Captain, as described in Paragraph #80, #94 through #103, #115 through #121, #155 through #162 And #165 through #173.

125.    On Information & Belief, DEFENDANT(s) ROBINSON, WERLICH & WILLIAMS provided substantial assistance to the actions issued by DEFENDANT(s) PATTERSON & SERIO, as without their knowledge and consent, then all other DEFENDANT(s) had no means to provide their substantial assistance, as described in paragraph(s) #99, #100, #101, #102, #103, #104 through #197 And #198 through #221.

126.    On Information & Belief, DEFENDANT ROBINSON has Record(s) which evidences all action(s) which provided substantial assistance that contributed to the other actions DEFENDANT(s) made which gave rise to the claims of this suit, as stated in paragraph(s) #80, #86, #96, #123 through #126, #156 through #164, #180 through #183 And #193 through #209.

127.    On Information & Belief, DEFENDANT DUGDALE, had been a Creator of the Known Policy, Custom/Culture called "SHU Timeout(s)" & with her knowledge & consent PLAINTIFF(s)

17

CLARK & HENDERSON had been subjected to the Injuries, Harm & Damage that African American Inmates suffer from "SHU Timeout(s)".

128. On Information & Belief, DEFENDANT DUGDALE, provided substantial assistance which contributed to PLAINTIFF(s) CLARK & HENDERSON suffering unlawful Restraints and/or punishments, by being a Creator of SHU Timeout(s) and where On the 18th, or the 19th of September for 2019, DEFENDANT DUGDALE openly stated, "You niggars are gonna learn that us White(s) are Superior..." while DEFENDANT HUSTON openly stated, "Or we will keep putting you Niggars on SHU Timeout(s), until you see that you Niggar Slaves are gonna obey your White Master(s)."

As, all of which occurred with PLAINTIFF(s) CLARK & HENDERSON being subjected to restraints and/or punishments without legal justification, as described in paragraph(s) #80, #94, #99 through #103, #155 through #160, #165 through #173 And #177 through #178.

129. On Information & Belief, DEFENDANT SERIO, provided substantial assistance which contributed to PLAINTIFF(s) CLARK & HENDERSON suffering unlawful Restraints and/or punishments, by being a Creator of SHU Timeout(s) and where around the 18th, or the 19th day of September for 2019, DEFENDANT SERIO took other actions which ensured that both PLAINTIFF(s) CLARK & HENDERSON would remain under unlawful Restraints and/or punishments when he began issuing Directives to PLAINTIFF HENDERSON by handling the SIS assignment linked to the SIS Investigation of PLAINTIFF CLARK & the SIS Informant Status forcibly issued to PLAINTIFF HENDERSON, which took place around some date unknown to PLAINTIFF(s) around the 16th of September for 2019 and was ongoing until March 13, 2020.

130. On Information & Belief, DEFENDANT SERIO, provided substantial assistance which contributed to violation of PLAINTIFF(s) CLARK & HENDERSON Right(s) under the 1st, 5th & 8th Amendment(s) and the Federal laws mentioned in paragraph(s) #155, #163, #164, #165 through #173 And #200 through #201.

131. On Information & Belief, Record(s) exist that are in the possession of the DEFENDANT(s), or that are readily accessible to the DEFENDANT(s), which evidences that DEFENDANT SERIO & other DEFENDANT(s) provided substantial assistance which contributed to the claim(s) raised and described in paragraph(s) #45, #60, #163, #164, #165, #166, #167, #168, #200 And #201.

132. On Information & Belief, DEFENDANT HUSTON, provided substantial assistance which contributed to PLAINTIFF(s) CLARK & HENDERSON suffering unlawful Restraints and/or punishments, on the 18th, or the 19th of September for 2019, as described in paragraph(s) #99 through #103, #115 through #121, #127, #128, #155 through #173 And #185 through #188.

133. On Information & Belief, PLAINTIFF(s) CLARK & HENDERSON while being unlawfully held under Restraint(s) and/or punishments, on the 18th, or the 19th day of September for 2019, once DEFENDANT DUGDALE had already openly stated, "You niggars are gonna learn that us White(s) are Superior" then DEFENDANT HUSTON openly stated, "Or we will keep putting you Niggars on SHU Timeout(s), until you see that you Niggar Slaves are gonna obey your White Master(s)."

As, all of which occurred with PLAINTIFF(s) CLARK & HENDERSON being unlawfully subjected to restraints and/or punishments without legal justification, as described in paragraph(s) #133 through #134, #155 through #173 And #185 through #188.

134. On Information & Belief, DEFENDANT HUSTON provided substantial assistance which contributed to the processing of the submitted transfer(s) for PLAINTIFF CLARK & HENDERSON, where Record(s) exist that evidences the violation of Federal law Right(s) as described in Paragraph(s) #156 through #164, #200 and #201.

135. On Information & Belief, Record(s) exist that are in the possession of the DEFENDANT(s), or that are readily accessible to the DEFENDANT(s), which evidences that DEFENDANT HARKINS & other DEFENDANT(s) provided substantial assistance which contributed to the claim(s) raised and described in paragraph(s) #136, #183 And #193.

18

136    On Information & Belief, DEFENDANT HARKINS with his knowledge & consent attended weekly SHU Meeting(s) from March 13, 2020 until July 13, 2020 and despite his knowledge that other DEFENDANT(s) had been violating the Rights of PLAINTIFF(s) CLARK & HENDERSON, DEFENDANT HARKINS failed to take other action(s) to report the violation of rights, or take other action(s) to curb, remedy, eliminate and/or prevent the actions described in paragraph(s) #183 And #193.

137    On Information & Belief, DEFENDANT HARKINS with his knowledge & consent provided substantial assistance that contributed to the Submitted Transfer(s) for PLAINTIFF CLARK & HENDERSON by issuing his signature(s), upon each Transfer submitted.

138.    On Information & Belief, DEFENDANT HERNANDEZ at her Directive, or with her knowledge and consent and/or by her action(s)/inaction(s) she provided substantial assistance that contributed to the Racially motivated SHU Timeout(s) not being curbed, remedied, eliminated and/or prevented, as described in paragraph(s) #139, #178, #185, #190

139.    On Information & Belief, DEFENDANT HERNANDEZ issued false Record(s) for the Psychology Department & for the SHU (Segregation), which kept the appearances that the Inmate(s) being assessed had actually either stated such information to DEFENDANT HERNANDEZ, or had actually displayed the actions that she had made Record(s) within the log(s) & files for Psychology.

140    On Information & Belief, DEFENDANT HERNANDEZ not only issued false Record(s), but had also failed to Record, the Emotional Distress that PLAINTIFF(s) CLARK & HENDERSON had both suffered and had both reported to her after the event(s) of the 18th, or the 19th day of September for 2019 and upon her SHU Report(s) conducted for the month(s) of April, May, June & July for the year 2020.
    DEFENDANT HERNANDEZ also influenced Non-Defendant Mr. Sears to not report the Emotional Distress that PLAINTIFF HENDERSON had reported to him around the month of September for 2019.

141    On Information & Belief, DEFENDANT PEREZ with his knowledge & consent provided substantial assistance that contributed to Conspiracies described in paragraph(s) #178, #179 through #181, #184, #193 And #197.

142    On Information & Belief, DEFENDANT HODGES with his knowledge & consent provided substantial assistance that contributed to the conspiracy described in paragraph(s) #80 And 179.

143    On Information & Belief, DEFENDANT SCHMIDT with his knowledge & consent provided substantial assistance that contributed to the Conspiracy described in Paragraph(s) #80, #180, #183 And #197.

144    On Information & Belief, DEFENDANT SCHMIDT with his knowledge & consent provided substantial assistance that contributed to the Assault described in paragraph(s) #183.

145    On Information & Belief, DEFENDANT SCHMIDT with his knowledge & consent provided substantial assistance that contributed to the Battery described in paragraph(s) #183.

146.    On Information & Belief, DEFENDANT SEELY with his knowledge & consent provided substantial assistance that contributed to the Conspiracy described in paragraph(s) #80 And #183.

147    On Information & Belief, DEFENDANT SEELY with his knowledge & consent provided substantial assistance that contributed to the Assault described in paragraph(s) #183.

148    On Information & Belief, DEFENDANT SEELY with his knowledge & consent

provided substantial assistance that contributed to the Battery described in paragraph(s) # 183.

149    On Information & Belief, DEFENDANT BAGWELL with his knowledge & consent provided substantial assistance that contributed to the Conspiracy described in paragraph(s) # 180.

150    On Information & Belief, DEFENDANT W. PHILLIPS with his knowledge & consent provided substantial assistance that contributed to the Conspiracy described in paragraph(s) # 183.

151    On Information & Belief, DEFENDANT FITZPATRICK with her knowledge & consent provided substantial assistance that contributed to the Conspiracy described in Paragraph(s) # 80, # 92, # 180, # 181 And # 193, plus 205.

152    On Information & Belief, DEFENDANT(s) ALLEN & JONES with their knowledge & consent provided substantial assistance that contributed to the Conspiracy described in paragraph(s) # 80, # 180, # 193 And # 205.

153    On Information & Belief, DEFENDANT T. PHILLIPS with his knowledge & consent provided substantial assistance that contributed to the Conspiracy described in paragraph(s) # 183.

154.    On Information & Belief, DEFENDANT(s) M. PUCKETT & A. WELLS and/or A. DOMINGUIEZ, with their knowledge & consent provided substantial assistance that contributed to the Conspiracy described in paragraph(s) # 45, # 183, 201, 203 And # 206.

155    The Purposeful Racist Discrimination Claim/Claim(s) shares a Common Nucleus of Operative Fact(s) with:

    (a) The Conspiracy to issue PLAINTIFF CLARK a Retaliatory Transfer Claim;

    (b) The 42 USC §1985(3) Claim;

    (c) The 42 USC §1986 Claim;

    (d) The Intentional Infliction of Emotional Distress Claim(s);

    (e) The Assault Claim(s);

    (f) The Battery Claim(s); and

    (g) The Federal Law Claim(s) for Declaratory Relief;

156    At all times relevant the Said Conspiracy to issue a Retaliatory Transfer of PLAINTIFF CLARK has been the Affirmative link, which existed between each Overt Act, that has totaled to Three (3) Overt Act(s) that have been committed by the DEFENDANT(s). The DEFENDANT(s) by their own Action(s), respectively have Involved PLAINTIFF HENDERSON, in each of the existing Overt Act(s), which have been carried out by the said DEFENDANT(s).

157    On Information & Belief, all the event(s) and occurrence(s), stated herein have stemmed from the Overt Act(s) and each of the Three Overt Act(s), which have been demonstrated equally provides a showing that From September of 2019 until July of 2020, a Conspiracy to issue PLAINTIFF CLARK a Retaliatory Transfer has been the General purpose of the Parties whom have reached agreement(s), as DEFENDANT(s) as a result of PLAINTIFF CLARK issuing Petition(s) by Email, by written petition(s) that need not take a specific form and by having filed Case No. # 3:19-cv-00297-SMY, which stated complaints against staff, the DEFENDANT(s) and the conditions of confinement, as Evidenced by Paragraph(s) # 53 & # 74 and other Record(s) in the possession of the DEFENDANT(s), or otherwise readily accessible to the DEFENDANT(s). Which constituted Retaliation for petitioning the government for redress of grievances and therefore violated the First Amendment.

158 On Information & Belief a Total of Three (3) Specific Overt Act(s) have been carried out, which Ensured a Retaliatory Transfer would be Issued to PLAINTIFF CLARK.

159 On Information & Belief, the first specific Overt Act had been to Ensure that:

(a) PLAINTIFF HENDERSON operated as an Informant;

(b) PLAINTIFF HENDERSON's Informant status led to PLAINTIFF CLARK being issued a Sovereign Citizen Classification; and

(c) the said Sovereign Citizen Classification being the intended purpose of PLAINTIFF HENDERSON to remain as an informant, held under forcible restraint(s) of Liberty and property, along with punishment that was cruel and unusual, or unreasonable.

160 On Information & Belief, the first specific Overt Act, had been initiated around the date(s) of September 16, 2019, or the 18th, or 19th of September, 2019 and had led to the Second specific Overt Act being initiated, after the failure of the First specific Overt Act, around the date of March 13, 2020, where Failure had been due to PLAINTIFF HENDERSON issuing his refusal to participate any further.

161 The Second specific Overt Act had been to Ensure that:

(a) PLAINTIFF HENDERSON was placed under SIS Investigation about the Book Titled, REDEMPTION MANUAL 5.0, Book Three: Operating Sovereign, which had been the same exact Book that DEFENDANT(s) had authorized that it be sent in, as described in Paragraph No. #193 ;

(b) PLAINTIFF CLARK, was Fraudulently added to the SIS Investigation of PLAINTIFF HENDERSON and the said Book; and

(c) Fraudulently adding PLAINTIFF CLARK to the said SIS Investigation of PLAINTIFF HENDERSON and the said Book had been for the general purpose of issuing PLAINTIFF CLARK a Retaliatory Transfer, which had failed and equally led to the Third specific Overt Act being initiated, after failure of the Second specific Overt Act.

162 On Information & Belief, the second specific Overt Act, had been initiated around the date of March 13, 2020 and had led to the Third specific Overt Act being initiated, after the failure of the Second specific Overt Act, around the date of July of 2020, where failure had been due to the Federal Transfer Authority, located in Grand Prairie, had repeatedly not accepted and repeatedly kept rejecting PLAINTIFF CLARK being added to the SIS Investigation of PLAINTIFF HENDERSON and the said Book, as being reason(s) for a Transfer of PLAINTIFF CLARK.

163 On Information & Belief, the Third specific Overt Act had been to Ensure that:

(a) On some date around July 13, 2020, NON-PLAINTIFF Inmate Earl Love had been removed from SHU Cell # 132, which had been the same SHU Cell assigned to PLAINTIFF CLARK and occupied by CLARK;

(b) On some date around July 13, 2020 PLAINTIFF HENDERSON was assigned to SHU Cell # 132, which had been the same SHU Cell assigned to PLAINTIFF CLARK and occupied by CLARK;

(c) On July 13, 2020 the DEFENDANT(s) removed PLAINTIFF HENDERSON from SHU Cell # 132, which had been the same SHU Cell assigned to both PLAINTIFF CLARK & PLAINTIFF HENDERSON, for the day(s) of Friday July 10, 2020, Saturday July 11, 2020 and Sunday July 12, 2020. As, the removal of PLAINTIFF HENDERSON had been for reasons which had been in excess of 28 CFR §524.73 et. al.; and

(d) the stated reasons for issuing Transfer of PLAINTIFF(s) CLARK & HENDERSON, had been upon DEFENDANT(s) stating that a Separatee Status existing against PLAINTIFF CLARK & PLAINTIFF HENDERSON, in violation of 28 CFR §524.73 et. al., especially §524.73(b) & §524.73(d).

164 On Information & Belief, the Third specific Overt Act had been initiated around the date of July 13, 2020, which had resulted in obtaining a Successful Designation for Transfer

of PLAINTIFF CLARK. Where upon Information & Belief the Designation for Transfer of PLAINTIFF CLARK, had in fact been successful, due to the false separatee and the violation of PLAINTIFF CLARK's & PLAINTIFF HENDERSON's Federal law Right(s), under 28 CFR §524.73 et. al., especially 28 CFR §524.73(b) Notification & §524.73(d) Removal, which had led to a false and fraudulent Separatee Status against PLAINTIFF CLARK & PLAINTIFF HENDERSON, without legal justification.

165 On Information & Belief, at all times relevant the said 42 USC §1985(3) Conspiracy has been the General purpose of the Parties reaching Agreement(s), as DEFENDANT(s) to Carry out the Overt Act(s) described with Pararaph(s)

166. On Information & Belief, the First specific Overt Act of the §1985(3) Conspiracy was to Ensure that:

(a) On the 18th, or 19th day of September for 2019, both PLAINTIFF CLARK & PLAINTIFF HENDERSON was held under Forcible Restraint(s) of Liberty and property, along with punishment that was unreasonable, cruel and unusual, as PLAINTIFF(s) CLARK & HENDERSON had been held under these said forcible restraint(s), within Housing Unit 2-A, and while in fornt of the Captain's Office, without legal justification;

(b) PLAINTIFF HENDERSON Remained within the Captain's Office, held under Forcible Restraint(s), without legal justification, then later forcibly took to the SHU to remain held under further Forcible Restraint(s), within the SHU until PLAINTIFF HENDERSON submitted to be an Informant, held under Forcible Restraint(s) of Liberty and property, along with punishment that was unreasonble, cruel and unusual, without legal justification and unwarranted; and

(c) PLAINTIFF CLARK remained within the SHU, from the date(s) that had been the 18th or 19th, the 19th, the 20th, the 21st, the 22nd, the 23rd & the 24th of September for 2019, where PLAINTIFF CLARK had remained held under Forcible Restraint(s) of Liberty and property, along with punishment that was unreasonable, cruel and unusual, without legal justification.

167 On Information & Belief, the Second specific Overt Act of the §1985(3) Conspiracy was to Ensure that:

(a) PLAINTIFF HENDERSON Remained an Informant held under forcible restraint(s) of Liberty and property, along with punishment that was unreasonable, cruel and unusual, without legal justification, as such occurred from the date of the 18th, or 19th day of September for 2019 until March 13, 2020; and

(b) PLAINTIFF CLARK Remained under forcible restraint(s) of Liberty and property, along with punishment that was unreasonable, cruel and unusual to deprive PLAINTIFF CLARK without legal justification his federal law right(s) to have use, enjoyment and access to the Administrative Remedy Program, under 28 CFR §542.10 et. seq., plus his federal law right(s) under §551.90 Policy to not be discriminated against on the basis of race, along with with his right(s), as stated within paragraph
As, such occurred, from the date of 18th or 19th day of September for 2019 until March 13, 2020.

168 On Information & Belief, the Third specific Overt Act of the §1985(3) Conspiracy was to Ensure that:

(a) PLAINTIFF HENDERSON was immediately placed in the SHU, at anytime PLAINTIFF HENDERSON Failed to Remain an Informant, held under Forcible Restraint(s) of Liberty and property, slong with punishment that was unreasonable, cruel and unusual, while in General population, which had occurred without legal justification.

169 On Information & Belief, the Retaliatory Transfer Conspiracy shares a Common

Nucleus of Operative Fact(s), with the 42 USC §1985(3) Conspiracy Claim and the 42 USC §1986 Claim, which both PLAINTIFF CLARK & PLAINTIFF HENDERSON had suffered, without legal justification.

170   On Information & Belief, "SHU Timeout(s)", is a known Custom, Culture, pattern and practice and/or unwritten policy Created, developed, encouraged and Tacitly Authorized by DEFENDANT(s) WERLICH, PATTERSON, DUGDALE & SERIO, as the Creators.

171   On Information & Belief, "SHU Timeout(s)" are intended for White staffmembers to specifically use these said, "SHU Timeout(s), on African American Prisoner(s)/Inmate(s) as a means to Condition Africacn American Prisoner(s) to have the Mentality that they are Niggar Slaves, whom must obey their White Master(s).

172.   On Information & Belief, "SHU Timeout(s)", both Derive from and are rooted upon the use of the SHU, without legal justification and in absence of any penological interest which would be served, where under the premise that African American Prisoner(s), or inmates, specifically are Niggar Slaves whom must obey their White Master(s), or they will suffer the SHU as punitive action(s) that are both in excess of the scope of the Authority provided to the DEFENDANT(s) and also in excess of the scope of the DEFENDANT(s)' employment, while equally being in excess of the Federal law(s) mentioned in paragraph(s) #200 And #201.

173.   On Information & Belief, the use of the Unauthorized SHU Placement(s), or the Threat of the use of the Unauthorized SHU Placement(s) has occurred either to Coerce African American Prisoner(s)/Inmate(s) to operate as Informant(s) under forcible Restraints of Liberty and property, along with Punishment that is unreasonable, cruel and unusual, while being in excess of Federal law.

Or to coerce, induce, or threaten African American Prisoner(s)/Inmate(s), to stop exercising their right(s) under the Constitution of the United States and the law(s) of the Federal and the State, thus holding prisoner whom are specifically African American under forcible restraints and/or punishments, until prisoner(s)/inmate(s) whom are specifically African American submit themselves to obey their so-called White Master(s).

This is an Invidious racial premise that has the sole intent to condition African American Prisoner(s)/Inmate(s) to subject themselves to have the Mentality that they are Niggar Slaves whom must obey their White Master(s), or suffer unwarranted punitive action(s) and consequences, such as the SHU, without legal justification.

174.   On Information & Belief, DEFENDANT DOWDING with his knowledge & consent provided substantial assistance that contributed to the Conspiracy described in paragraph(s) #180 And #205.

175.   On Information & Belief, DEFENDANT DOWDING with his knowledge & consent provided substantial assistance that contributed to the Assault described in paragraph(s) #183 And #205.

176.   On Information & Belief, DEFENDANT DOWDING with his knowledge & consent provided substantial assistance that contributed to the Battery described in paragraph(s) #183 And #205.

177.   On Information & Belief, the Substantial assistance that contributed to the First specific Overt Act of the Conspiracy to issue PLAINTIFF CLARK a retaliatory Transfer had involved DEFENDANT(s) WERLICH, PATTERSON, DUGDALE, SERIO, SANTIAGO, & CHEEKS, as supervisory DEFENDANT(s) whom each with knowledge & consent issued their Signature(s) that authorized PLAINTIFF CLARK to remain under a SIS Investigation without legal justification while also authorizing PLAINTIFF HENDERSON to remain the Informant to that SIS Investigation of PLAINTIFF CLARK, as the Record(s) will indicate.

178.   On Information & Belief, the Substantial assistance that contributed to the

23

First specific Overt Act of the Conspiracy to issue PLAINTIFF CLARK a retaliatory Transfer had Involved DEFENDANT(s) WERLICH, PATTERSON, DUGDALE, PEREZ, HUSTON & HERNANDEZ, whom each at their Directive, or with their Knowledge & consent had been involved in the other action(s) that had been carried out on the 18th, or the 19th, the 19th, the 20th, the 21st, the 22nd, the 23rd & the 24th of September for 2019 where WERLICH had been a supervisor whom issued a Directive, PATTERSON had conducted the actions stated in Paragraph(s) #116 & #184, DUGDALE had carried out the actions stated in Paragraph(s) #128 & #184, PEREZ had carried out the actions stated in Paragraph(s) #178 & #184, HUSTON had carried out the actions stated in paragraph(s) #132 & #184 & HERNANDEZ had manipulated the Record(s) by not stating the Emotional Distress that PLAINTIFF(s) CLARK & HENDERSON had reported that they had each suffered on those days.

179. On Information & Belief, the Substantial assistance that contributed to the First specific Overt Act of the Conspiracy to issue PLAINTIFF CLARK a retaliatory Transfer had Involved DEFENDANT(s) SERIO & HODGES, whom with their knowledge & consent had been involved in the action(s) that had been carried out after the 18th, or the 19th of September until March 13, 2020 where SERIO had ensured that PLAINTIFF HENDERSON remained as an Informant held under forcible restraints & punishment while further ensuring that PLAINTIFF HENDERSON's Informant status was an assistance to the SIS Investigation of PLAINTIFF CLARK for the purposes of issuing PLAINTIFF CLARK a fraudulent Sovereign Citizen Classification and HODGES assisted the SIS Investigation of PLAINTIFF CLARK offering her knowledge of the allege actions of Sovereign Citizens and how to obtain a Sovereign Citizen Classification on them.

180. On Information & Belief, the Substantial assistance that contributed to the First specific Overt Act of the Conspiracy to issue PLAINTIFF CLARK a retaliatory Transfer had Involved DEFENDANT(s) WILLIAMS, SANTIAGO, CHEEKS, BAGWELL, PATTERSON, ROBINSON, DUGDALE, SERIO, SCHMIDT, PEREZ, HERNANDEZ, FITZPATRICK, JONES, ALLEN, DOWDING & HARKINS, whom either at their directive and/or with their consent & knowledge had been involved in other actions that had been carried out around the last two weeks of February until March 13, 2020, where FITZPATRICK, JONES & ALLEN had used their access to the Institutional Mailroom as Mailroom staffmember(s) to assist the other DEFENDANT(s) with respect to the arrival of the said Book, Titled REDEMPTION MANUAL 5.0 Book Three Operating Sovereign, so that the Book, Titled REDEMPTION MANUAL 5.0 could be used to obtain a Sovereign Citizen Classification of PLAINTIFF CLARK. Also where DEFENDANT(s) WILLIAMS, SANTIAGO, CHEEKS, BAGWELL, PATTERSON, ROBINSON, DUGDALE, SERIO, SCHMIDT, PEREZ, HERNANDEZ, HARKINS & DOWDING had been involved in the Decision that had Authorized SERIO to issue PLAINTIFF HENDERSON the Authority to have the Book Titled, REDEMPTION MANUAL 5.0 Book Three Operating Sovereign to be sent in so that the arrival of the Book Titled, REDEMPTION MANUAL 5.0 Book Three Operating Sovereign could be used to issue PLAINTIFF CLARK a Sovereign Citizen Classification.

181. On Information & Belief, the Substantial assistance that contributed to the Second specific Overt Act of the Conspiracy to issue PLAINTIFF CLARK a retaliatory Transfer had Involved DEFENDANT(s) WILLIAMS, SANTIAGO, CHEEKS, PATTERSON, ROBINSON, SERIO, SCHMIDT, PEREZ & FITZPATRICK, whom at their directive and/or with their consent & knowledge had been involved in other actions that had been carried out around March 13, 2020 until April 17, 2020, where DEFENDANT(s) WILLIAMS, SANTIAGO, CHEEKS, PATTERSON, ROBINSON, SERIO, SCHMIDT, PEREZ & FITZPATRICK all had been involved in the decision to fraudulently add PLAINTIFF CLARK to the SIS Investigation of PLAINTIFF HENDERSON and the Book Titled, REDEMPTION MANUAL 5.0 Book Three Operating Sovereign, so that the SIS Investigation of PLAINTIFF HENDERSON & the Book could be used to issue PLAINTIFF CLARK a Transfer. As DEFENDANT(s) WILLIAMS, SANTIAGO, CHEEKS, PATTERSON, ROBINSON all process the Submitted Transfer for these reasons and DEFENDANT(s) SCHMIDT, PEREZ & FITZPATRICK assisted DEFENDANT SERIO with the Report & the SIS Investigation File documenting a so called SIS Investigation of PLAINTIFF CLARK being a participate somehow.
As, such led to DEFENDANT(s) SERIO, SCHMIDT & PEREZ arriving at cell #204 of

24

Housing unit #2-A under these fraudulent and false Investigative reasons and placing PLAINTIFF CLARK in the SHU without legal justification.

*182.*      On Information & Belief, the Substantial assistance that contributed to the Second specific Overt Act of the Conspiracy to issue PLAINTIFF CLARK a retaliatory Transfer had Involved DEFENDANT(s) WILLIAMS, SANTIAGO, CHEEKS, PATTERSON, ROBINSON, SERIO & HUSTON, where WILLIAMS, SANTIAGO, CHEEKS, PATTERSON & ROBINSON all issued their signatures upon the Submitted Transfer that was being processed on PLAINTIFF CLARK, where ROBINSON & HUSTON handled the Transfer Document(s) that had to be processed for the Transfer of PLAINTIFF CLARK & where SERIO had submitted the SIS Investigation File & Report with a Recommendation for a Transfer of both PLAINTIFF CLARK & HENDERSON with the Book Titled, REDEMPTION MANUAL 5.0 being stated a reason for the Transfer Recommendation.

*183.*      On Information & Belief, the Substantial assistance that contributed to the Third specific Overt Act of the Conspiracy to issue PLAINTIFF CLARK a retaliatory Transfer had Involved DEFENDANT(s) WILLIAMS, SANTIAGO, CHEEKS, PATTERSON, ROBINSON, HUSTON, SERIO, SCHMIDT, W. PHILLIPS, SEELY, DOWDING, HERNANDEZ, HARKINS, M. PUCKETT, T. PHILLIPS & A. WELLS and/or A. DOMINGUIEZ, whom all at their directive and/or with their knowledge & consent had been involved in carrying out the Third specific Overt Act, where T. PHILLIPS would substitute for HUSTON so that HUSTON did not conduct the UDC Hearing, while T. PHILLIPS would fraudulently ensure that the Waiver of Appearance Form (BP-A0307) was not issued so that it would appear by Documentation that PLAINTIFF(s) CLARK & HENDERSON had been informed of the Rights at an UDC Hearing. Once the Waiver of Appearance Form (BP-A0307) was not issued for PLAINTIFF CLARK & PLAINTIFF HENDERSON then T. PHILLIPS could rely upon this to further ensure that plausible deniability existed upon the fact that the (PP-10 Separatee) Form had not been reviewed to evidence that PLAINTIFF(s) had suffered an Unlawful Use of Force based upon the Fraudulent reason(s) which the (PP-10 Separatee) Form did not support.
      DEFENDANT(s) CHEEKS, SERIO, SCHMIDT & DOWDING had been involved in the unlawful use of force where each deliberately & recklessly disregarded the (PP-10 Separatee) Form which evidenced that PLAINTIFF(s) CLARK & HENDERSON had not been promptly issued the required written notification, which had been required where the DEFENDANT(s) had been required to take all other actions to resolve the situation, under 28 CFR §552.20 prior to involving a Use of Force Team.
      DEFENDANT(s) SERIO, SCHMIDT, DOWDING & SEELY had been the issuer(s) of the Unlawful Use of Force, where all had knowledge that no (PP-10 Separatee) Form had been provided to PLAINTIFF(s) CLARK & HENDERSON as an alternative to resolve the situation without issuing an use of force. While DEFENDANT HERNANDEZ failed to perform her duty to determine the mental state of PLAINTIFF CLARK & PLAINTIFF HENDERSON prior to the issuance of the Use of Force.
      DEFENDANT(s) ROBINSON & HUSTON had been involved where 28 CFR §524.73(b) & §524.73(d) required that PLAINTIFF CLARK & PLAINTIFF HENDERSON be issued written notification, which neither ROBINSON, nor HUSTON had provided.
      While HARKINS is to ensure the proper processing of the (PP-10 separatee) form, which he failed to do.
      DEFENDANT(s) T. PHILLIPS, M. PUCKETT & A. WELLS and/or A. DOMINGUIEZ had also relied upon the other actions of T. PHILLIPS whom fraudulently ensured that the waiver of appearance form (BP-A0307) had not been issued to further ensure that DHO conducted by M. PUCKETT could fraudulently state that PLAINTIFF CLARK had not Waived his appearance for UDC Hearing and instead had only refused to participate, where both WELLS/DOMINGUIEZ and M. PUCKETT had been informed that PLAINTIFF CLARK had waived his appearance of both the UDC & the DHO, where each ensured that Record of this was not made.

*184.*      On Information & Belief, the Substantial Assistance that contributed to the First specific Overt Act of the §1985(3) Conspiracy had Involved DEFENDANT(s) WERLICH, PATTERSON, DUGDALE, SERIO, HUSTON & PEREZ, whom with their directive, and/or with their knowledge & consent DEFENDANT(s) PATTERSON & DUGDALE had arrived to Housing Unit 2-A, on

the 18th, or the 19th of September and DEFENDANT HUSTON had already been present at the location, which had been right outside of her Office within the unit.

PLAINTIFF(s) CLARK & HENDERSON had been exercising their rights to petition and the DEFENDANT(s) intended to stop PLAINTIFF(s) CLARK & HENDERSON from exercising those right(s). PLAINTIFF CLARK was told to "Shut up" by DEFENDANT PATTERSON right before both DEFENDANT(s) DUGDALE & HUSTON took PLAINTIFF(s) CLARK & HENDERSON and held them under forcible restraints & punishments. DEFENDANT(s) DUGDALE & HUSTON openly stated to both PLAINTIFF CLARK & PLAINTIFF HENDERSON, "You niggars are gonna learn that us White(s) are Superior..." "Or we will keep putting you Niggars on SHU Timeout(s), until you see that you Niggar Slaves are gonna obey your White Master(s)."

DEFENDANT PATTERSON entered the Captain's Office & Openly stated to PLAINTIFF HENDERSON, "You are gonna be our Niggar Slave in one way, or the other. So, we can either take you to the SHU until you Agree to Operate as our informant against CLARK, or you can be the Niggar Slave that we planned for you to be and just agree right now to operate as our Informant. Either way we are still taking your ass to the SHU. So, you can go to the SHU to stay, or you can go to the SHU, so that we can put you there with CLARK while we make Our threats to Retaliate against him, if his ass keep filing electronic complaints and lawsuits and threats to retaliate against you for being around him. This way CLARK thinks that we had you in the CAPTAIN's Office to threaten you to stay away from him and we can tell you right there in front of CLARK that we are letting you out the SHU today. But, we are keeping CLARK on a SHU Timeout all weekend until Tuesday, so CLARK learns that when his White Master tells his Niggar Slave to Shut up, he better shut up, immediately."

DEFENDANT PEREZ forcibly placed PLAINTIFF HENDERSON in the SHU & held him under forcible restraint(s) without issuing PLAINTIFF HENDERSON a Lock-up Order until PLAINTIFF HENDERSON agreed under threat, duress & coercion to operate as informant, against PLAINTIFF CLARK.

DEFENDANT(s) WERLICH, PATTERSON, DUGDALE & SERIO had been the Creator(s) of the SHU Timeout(s).

185. On Information & Belief, PLAINTIFF CLARK had been held in the SHU unlawfully and without legal justification from the 18th, or the 19th of September for 2019 until the 24th of September for 2019. And had not been issued any written notice, nor had been in receipt of DEFENDANT HERNANDEZ documenting the Emotional Distress that he suffered, which he reported to Psychology Staff.

186 On Information & Belief, Under 28 CFR §541.26(a) requires the (SRO) Segregation Review Official to conduct a Three day Review, which did not occur, where it is the belief that the Executive Staff whom made their Rounds in the SHU on Friday, September 20th is responsible to ensure this occurs. DEFENDANT(s) SANTIAGO, CHEEKS, WERLICH & PATTERSON are the Executive staff whom made such Rounds.

187 On Information & Belief, both PLAINTIFF CLARK & Inmate King, whom shared the same Assigned SHU cell from the 18th, or the 19th of September for 2019 until September 24, 2019 when they both had been released from the SHU, prior to Inmate King being placed back in the SHU later that same day. PLAINTIFF CLARK had been reassigned to his prior cell assignment, H.U. #2-A Cell #204, with assigned Cell-mate, Inmate ALFORD, after Inmate CARDRICAUS had moved from Cell #204.

188. On Information & Belief, the same exact day PLAINTIFF CLARK had been released from the SHU, on Tuesday September 24, 2019, PLAINTIFF HENDERSON immediately explained clearly that DEFENDANT(s) PATTERSON, DUGDALE, SERIO & HUSTON had used the Coercive SHU Timeout(s) to Unlawfully & Unconstitutionally Induce, threaten & compel an unwilling HENDERSON to agree to operate as an Informant against CLARK.

And that had PLAINTIFF HENDERSON not agreed then HENDERSON would have remained in the SHU, under SHU Timeout until he agreed and would not have been released from the SHU that same exact day, as PLAINTIFF HENDERSON would have been held in Restraints & under punishments, without legal justification.

26

189. On Information & Belief, from Setember 25, 2019 until March 13, 2020 PLAINTIFF(s) had placed numerous Petition(s) that did not need to take a specific form and had ensured that they entered the U.S. Mail by the Institutional mail system. PLAINTIFF(s) had also sent electronic petition(s) which can be located by the DEFENDANT(s), as the access to the electronic petition(s) will provide the details of majority of the written petition(s) that PLAINTIFF(s) CLARK & HENDERSON had submitted.

190. Around the last two weeks of September for 2019, PLAINTIFF HENDERSON had reported the Emotional Distress he had been suffering from to the Psychology Department.

191. On Information & Belief, Around the first week of October for 2019, PLAINTIFF HENDERSON had explained to PLAINTIFF CLARK that he had been repeated threatened by DEFENDANT SERIO, upon PLAINTIFF HENDERSON watching DEFENDANT power on the Office machine for shredding paper document(s) and then place all of the Written petition(s) that had been siezed out of U.S. Mail and had shredded them right in front of PLAINTIFF HENDERSON.

192. On Information & Belief, both CLARK & HENDERSON had agreed that for their own safety that it was best that the DEFENDANT(s) had never found out that HENDERSON had already informed PLAINTIFF CLARK about operating as an informant and that PLAINTIFF CLARK was under a fraudulent SIS Investigation so that CLARK could be Classified as a Sovereign Citizen, which would allow the DEFENDANT(s) to Transfer him for those reasons. PLAINTIFF HENDERSON, further expressed his utter fear and emotional distress he was suffering from being treated like a Slave whom must submit to his White Master(s), or else.

193. On Information & Belief, on some date unknown to the PLAINTIFF(s), around February for the year of 2020, PLAINTIFF HENDERSON met with DEFENDANT(s) SERIO, PEREZ, PATTERSON & DUGDALE, expressed that if they agreed he would have his family send a photocopied version of the Book Titled, REDEMPTION MANUAL 5.0 Book Three Operating Sovereign by U.S. Mail to the Institution and that book could be used to obtain a Sovereign Citizen Classification of PLAINTIFF CLARK. DEFENDANT(s) held a meeting and after the meeting DEFENDANT(s) PATTERSON & SERIO informed PLAINTIFF HENDERSON that they all agreed that the photocopy version of the Book Titled, REDEMPTION MANUAL 5.0 Book Three Operating Sovereign could be mailed in, but DEFENDANT(s) WILLIAMS, PATTERSON, SERIO, ROBINSON, HARKINS, DUGDALE, FITZPATRICK, JONES & ALLEN wanted the Book to be specifically mailed in to PLAINTIFF CLARK.

194. On Information & Belief, the photocopied version of the Book Titled, REDEMPTION MANUAL 5.0 had arrived on some date prior to March 13, 2020, where Electronic Record(s) which are readily accessible to the DEFENDANT(s) exist from March 03, 2020 and display Petition(s) against the DEFENDANT(s).

195. On Information & Belief, on March 13, 2020 PLAINTIFF HENDERSON had been placed under SIS Investigation under the fraudulent pretense that the Book Titled, REDEMPTION MANUAL 5.0 Book Three Operating Sovereign had unauthorized materials stated in it. This Fraudulent SIS Investigation was used in false and malicious manner where on April 17, 2020 PLAINTIFF CLARK was added to this Fraudulent SIS Investigaion which recommended PLAINTIFF CLARK be Transferred.

196. On Information & Belief, on March 13, 2020 PLAINTIFF HENDERSON expressed that he refused to operate as an informant against PLAINTIFF CLARK. And in response, DEFENDANT SERIO, openly stated to HENDERSON, "What a waste. Now, you're gonna stay in the SHU Niggar on SHU Timeout until you change your mind, or we come up with a way to transfer both of you NIGGAR(s)!"

197. On Information & Belief, On Friday April 17, 2020 DEFENDANT(s) SERIO, PEREZ & SCHMIDT arrived to Housing Unit 2-A, Cell #204 and placed PLAINTIFF CLARK under forcible restraint(s) & punishment(s) without legal justification, then issued the retaliatory threat(s) and/or the statement(s) intended to ensure PLAINTIFF CLARK suffer Intentional

27

Emotional Distress, which PLAINTIFF CLARK did suffer, despite DEFENDANT HENDERSON ensuring that she did not document this on Sunday April 19, 2020, where DEFENDANT SERIO openly stated to PLAINTIFF CLARK, "Heard that your lawsuit just got dismissed, and now we are gonna teach you niggar, how a slave is suppose to obey his Master(s)."

And where DEFENDANT PEREZ openly stated to PLAINTIFF CLARK, "now we found the perfect reason to transfer your ass now CLARK and you will never be able to prove that we are only using HENDERSON's Investigation to Transfer you. I bet now you will see what filing lawsuits and grievances gets you!"

198. On Information & Belief, Between March 13, 2020 and July 31, 2020 PLAINTIFF HENDERSON has had his Federal law Right(s) violated, while these violations of rights had been intended to ensure that PLAINTIFF CLARK would be Transferred, as PLAINTIFF HENDERSON has submitted numerous Petition(s) that need not take a specific form & also has submitted numerous Administrative Remedy Form(s) known as BP 8's, BP 9's & BP 10's, along with numerous Standard 95 Forms, upon the monthly violation(s) of 28 CFR §541.26(b) & (c), for the months of April, May, June and July for 2020.

199. On Information & Belief, Between April 17, 2020 and July 31, 2020 PLAINTIFF CLARK has had his Federal law Right(s) violated, while these violations of rights had been intended to ensure that PLAINTIFF CLARK would be Transferred, as PLAINTIFF CLARK has submitted numerous Administrative Remedy Form(s) known as BP 8's, BP 9's & BP 10's, along with numerous Standard 95 Forms and numerous Petition(s) that need not take a specific form have been submitted.

200. On Information & Belief, these different processes that have been sought by PLAINTIFF(s) CLARK & HENDERSON in order to exercise rights to petition seeking Administrative Remedies have attempted to address the following complaint(s):

(a) Violations of 28 CFR §541.26(b) & (c);

(b) Violation(s) of 28 CFR §513.40(a), §540.10 et. seq., especially 540.10 - 540.25 and §513., Access to Record(s) & §524.73(b) & (d) with respect to the (PP-10 Separatee) Form and the Authority under 28 CFR §524.73(f), which has been abused in excess of law.

201. On Information & Belief, violation(s) of 28 CFR Section(s) have occurred under 512.13 et. seq., 513.40 et. seq., 524.10 - 524.11, 524.73(b) & (d), 540.2 et. seq., 540.10 et. seq., 541.1 - 541.8, 541.20 - 541.33, 542.10 - 542.19, 543.10 - 543.16, 543.30 - 543.32, 549.60 -549.66, 552.20 - 552.27 & 551.90, where upon PLAINTIFF(s) obtaining record(s) upon discovery the further violations of these federal law right(s) will be stated.

202. On Information & Belief, as pursuant to the Conspiracies stated herein, and the other violation of Rights the FCI-GREENVILLE Institutional Mail system has been unlawfully misused & compromise, thus the Record(s) of the U.S. Post Office concerning PLAINTIFF(s) CLARK & HENDERSON U.S. Mail will be sought during discovery.

203. On Information & Belief, the PLAINTIFF(s) may not be able to state for certain whether the Adminstative Remedy Form, Standard 95 Forms, or the written petitions that need not take a specific form have reached the other Bureau of Prisons required filing locations, however Affirmative misconduct of the DEFENDANT(s) has in fact cause the PLAINTIFF(s)' an inability to exhaust all administrative remedies, as the DEFENDANT(s) have not processed them, or otherwise made such exhaustion unavailable to PLAINTIFF(s).

204. On Information & Belief, Ultra Vires Conduct exists in this case within the meaning issued in, Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457 (1948), where PLAINTIFF(s) do in fact intend to challenge any designation by the U.S. ATTORNEY GENERAL that states that all event(s), incident(s) & occurrence(s) have occurred under the authority and powers of the Sovereign, within the meaning of the scope of their employment and duties, as paragraph(s) 1 through 236, are incorporated by reference as

28

if separately stated, herein.

205.        On Information & Belief, Record(s) exist also that displays a clear showing that:

(a) DEFENDANT(s) FITZPATRICK, JONES & ALLEN have used the Institutional mailroom to conduct unauthorized siezure(s) and unlawful siezure(s) of PLAINTIFF(s) mail, where there is evidence of a pattern & practice of manipulation of mail policy to carry out unlawful & unwarranted activities with the mail;

(b) DEFENDANT(s) have directly, indirectly, or tacitly authorized DEFENDANT DOWDING to not only carry out the unlawful actions setforth herein, but has rewarded his corruption by allowing him to act as an SIS Lieutenant and SHU Supervisor, where these actions and the failure to report these actions equally constitutes Ultra Vires, where review of the record(s) linked to DEFENDANT DOWDING will display such a showing of such Ultra vires conduct, along with a pattern and practice resulting in corruption.

206.        On Information & Belief, a Controversy exists over whether the DEFENDANT(s) had acted Ultra Vires, or have displayed Ultra Vires Conduct, thus the Rights of the parties and the legal relations of the parties, require a declaratory judgment, upon PLAINTIFF(s) CLARK & HENDERSON and DEFENDANT(s) WILLIAMS, WERLICH, SANTIAGO, CHEEKS, PATTERSON, ROSALIN ROBINSON, SERIO, DUGDALE, SCHMIDT, PEREZ, W. PHILLIPS, HODGES, HUSTON, SEELY, T. PHILLIPS, HERNANDEZ, FITZPATRICK, ALLEN, JONES, DOWDING, HARKINS, BAGWELL, & A. WELLS and/or A. DOMINGUIEZ.

207.        On Information & Belief, a Controversy exists over whether PLAINTIFF(s) are authorized by law to issue Petition(s), which state violations of the PLAINTIFF(s) rights has occurred, further stating notice of the incident which constituted the violations of these rights, along with the amount of monetary relief, or settlement demanded, and/or requests for the contact information of any existing Indemnity provider(s) and policy information and request that the party provide any request for a Hearing, or the ability to state whether their act(s) had been Ultra Vires Conduct, or withing the Scope of their Employment.

208.        On Information & Belief, a Controversy exists over whether DEFENDANT(s) have any existing Indemnity provider(s) and/or policy for Ultra vires conduct, and whether Plaintiff(s) have any right to seek such Contact Information and Policy information.

209.        Paragraph(s) 206 through 208, are incorporated by reference as if separately stated herein, where these controversies stem from PLAINTIFF(s) being retaliated against for attempts to exercise Petitions in the protection of these right(s), thus had the PLAINTIFF(s) not sought such information and exercise said petitions, then the DEFENDANT(s) would not have initiated other actions which gave rise to these claim(s).

210.        COUNT # 1, PURPOSEFUL RACIST DISCRIMINATION, in violation of PLAINTIFF(s) CLARK & HENDERSON 1st & 5th Amendment Right(s), upon the actions of DEFENDANT(s) WERLICH, PATTERSON, DUGDALE & SERIO carried out a Racially motivated purposeful discrimination, which specifically targeted African American Prisoner(s) without legal justification.

211.        COUNT #2, CONSPIRACY TO ISSUE PLAINTIFF CLARK A RETALIATORY TRANSFER, in violation of PLAINTIFF CLARK's 1st Amendment Right(s), upon the actions of DEFENDANT(s) WILLAIMS, WERLICH, SANTIAGO, CHEEKS, PATTERSON, BAGWELL, ROBINSON, SERIO, DUGDALE, SCHMIDT, PEREZ, W. PHILLIPS, HODES, HUSTON, SEELY, T. PHILLIPS, HERNANDEZ, FITZPATRICK, ALLEN, JONES, DOWDING, HARKINS, A. WELLS and/or A. DOMINDUIEZ & M. PUCKETT, whom carried out a retaliatory conspiracy where the submitted petitions and filing of case No. #3:19-cv-00297-SMY resulted as the moving force behind the DEFENDANT(s) actions whom can not state that they would have took the same course of actions which had been made without legal justification.

29

212. COUNT #3, THE 42 USC §1985(3) CONSPIRACY, in violation of PLAINTIFF(s) CLARK's & HENDERSON's Federal Right(s), under 42 USC §1985(3), upon DEFENDANT(s) WERLICH, DUGDALE, PATTERSON & SERIO, whom had a Racially Discriminatory Moving Force behing the Action(s) that they carried out, which without legal justification took these racially discriminatory action(s) against PLAINTIFF(s), which sought specifically to condition them as African American Prisoner(s) to submit themselves as Niggar Slaves to these so-called White Master(s) and stop the PLAINTIFF(s) from exercising their rights to petition, in deprivation of them being afforded equal protection of the law(s).

213. COUNT #4, THE 42 USC §1986 CLAIM, in violation of PLAINTIFF(s) Federal Right(s) under 42 USC §1986, as linked to COUNT # 3.

214. COUNT #5, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM, upon the Actions of DEFENDANT DUGDALE, in violation of PLAINTIFF CLARK's & PLAINTIFF HENDERSON's State Law Right(s) in the State of Illinois.

215. COUNT #6, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM, upon the Actions of DEFENDANT HUSTON, in violation of PLAINTIFF CLARK's & PLAINTIFF HENDERSON's State Law Right(s) in the State of Illinois.

216. COUNT #7, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM, upon the Actions of DEFENDANT PATTERSON, in violation of PLAINTIFF HENDERSON's State Law Right(s) in the State of Illinois.

217. COUNT #8, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM, upon the Actions of DEFENDANT SERIO, in violation of PLAINTIFF CLARK's State Law Right(s) in the State of Illinois.

218. COUNT #9, ASSAULT, upon the Action(s) of DEFENDANT(s) WILLIAMS, SANTIAGO, CHEEKS ROBINSON, SERIO, SCHMIDT, SEELY, HUSTON, HARKINS, BAGWELL & DOWDING, whom in violation of PLAINTIFF(s) CLARK's & HENDERSON's State Law Rights in the State of Illinois, had prearranged the Fraudulent use of (PP-10 Separatee) Form, as a means to unwarrantly & unlawfully issue a battery to PLAINTIFF CLARK & PLAINTIFF HENDERSON, whom both suffered physical & emotional injuries and distress, on July 13, 2020 as a result of the DEFENDANT(s) fraudulently staging the events which led up to both the Assault and then the Battery.

219. COUNT #10, BATTERY, upon the Action(s) of DEFENDANT(s) WILLIAMS, SANTIAGO, CHEEKS, ROBINSON, SERIO, SCHMIDT, SEELY, HUSTON, HARKINS, BAGWELL & DOWDING, whom in violation of PLAINTIFF(s) CLARK's & HENDERSON's State Law Rights in the State of Illinois, had prearranged the Fraudulent use of (PP-10 Separatee Form, as a means to unwarrantly & unlawfully issue a Battery to PLAINTIFF CLARK & PLAINTIFF HENDERSON, whom both suffered physical & emotional injuries and distress, on July 13, 2020 as a result of the DEFENDANT(s) fraudulently staging the events which led up to both the Assault and then the Battery.

220. COUNT #11, CLAIM FOR DECLARATORY RELIEF, under 28 USC §2201 & §2202, with respect to COUNT #2, as specific relief is sought in favor of both PLAINTIFF CLARK & PLAINTIFF HENDERSON, where no Damages are sought in compensation, Paragraph(s) #209 & #211.

221. COUNT #12, CLAIM FOR DECLARATORY RELIEF, under 28 USC §2201 & §2202, with respect to specific relief being sought in the alternative for COUNT(s) #4 - #8, as linked to paragraph(s) #213 & #217.

222. WHEREFORE, with respect to Paragraph(s) 1 through 221, they are incorporated by reference, as if separately stated, where PLAINTIFF(s) CLARK & HENDERSON both respectfully request(s) that this Court Grant the Following Relief.

223. Order a Jury Trial for COUNT(s) #1, #3 & #4-#8, which seeks Damages against the DEFENDANT(s) Named therein. Where Count(s) #4 - #8 are in the alternative to issued Declaratory Relief, as stated in Paragraph #221, upon Count(s) #4 - #8 not being Granted a Jury Trial.

224. PLAINTIFF(s) CLARK & HENDERSON seeks Compensatory damages for COUNT #1, where each PLAINTIFF seeks $10,000 from each DEFENDANT severally and $40,000 from all DEFENDANT(s), collectively for a total of $80,000 to be paid to each PLAINTIFF whom also further seeks punitive damages upon the Jury Trial.

225. PLAINTIFF(s) CLARK & HENDERSON seeks Compensatory damages for COUNT #3, where each PLAINTIFF seeks $15,000 from each DEFENDANT severally and $35,000 from all DEFENDANT(s), collectively for a total of $95,000 to be paid to each PLAINTIFF whom also further seeks punitive damages upon the Jury Trial.

226. PLAINTIFF(s) CLARK & HENDERSON seeks Compensatory damages for COUNT #4, where each PLAINTIFF seeks $5,000 from each DEFENDANT severally and $7,500 from all DEFENDANT(s), collectively to be paid to each PLAINTIFF whom also further seeks punitive damages upon the Jury Trial.

227. PLAINTIFF(s) CLARK & HENDERSON seeks Compensatory damages for COUNT #5, where each PLAINTIFF seeks $10,000 from DEFENDANT DUGDALE, to be paid to each PLAINTIFF whom also further seeks punitive damages upon the Jury Trial.

228. PLAINTIFF(s) CLARK & HENDERSON seeks Compensatory damages for COUNT #6, where each PLAINTIFF seeks $10,000 from DEFENDANT HUSTON, to be paid to each PLAINTIFF whom also further seeks punitive damages upon the Jury Trial.

229. PLAINTIFF HENDERSON seeks Compensatory damages for COUNT #7, where PLAINTIFF seeks $15,000 to be paid to PLAINTIFF HENDERSON whom also further seeks punitive damages upon the Jury Trial.

230. PLAINTIFF CLARK seeks Compensatory damages for COUNT #8, where PLAINTIFF seeks $10,000 to be paid to PLAINTIFF CLARK whom also further seeks punitive damages upon the Jury Trial.

231. PLAINTIFF(s) CLARK & HENDERSON seeks Compensatory damages for COUNT #9, where each PLAINTIFF seeks $15,000 from each DEFENDANT severally and $100,000 from all DEFENDANT(s), collectively to be paid to each PLAINTIFF whom also further seeks punitive damages upon the Jury Trial.

232. PLAINTIFF(s) CLARK & HENDERSON seeks Compensatory damages for COUNT #10, where each PLAINTIFF seeks $15,000 from each DEFENDANT severally and $100,000 from all DEFENDANT(s), collectively to be paid to each PLAINTIFF whom also further seeks punitive Damages upon Jury Trial.

233. PLAINTIFF CLARK & PLAINTIFF HENDERSON both seek specific relief, as linked to a determination upon Paragraph(s) #206 & #209, in addition to COUNT #2 requesting a Declaration of Rights and Legal relations.

234. PLAINTIFF CLARK & PLAINTIFF HENDERSON both seek specific relief, as linked to a determination upon Paragraph(s) #206 & #209, in addition to this request for a Declaration of Rights and Legal relations, in alternative for COUNT(s) #4-8.

235. AWARD, PLAINTIFF(s) all costs and Fee(s) and/or Expenses for this Lawsuit, accordingly.

236. Paragraph(s) 1 through 235, are incorporated by reference, as if separately stated herein, with respect to all Fact(s), Averment(s) and paragraph(s) which are True and correct to the best of PLAINTIFF(s) CLARK & HENDERSON knowledge, information and belief, where:

I, SACOREY CLARK declare and verify, as to 28 U.S.C. §1746, that the foregoing Complaint is true and correct under penalty of perjury for the laws of the United States of America.

I, LAVERN HENDERSON declare and verify, as to 28 U.S.C. §1746, that the foregoing Complaint is true and correct under penalty of perjury for the laws of the United States of America.

Respectfully Submitted,

31

IV.    SIGNATURE(s) of PLAINTIFF(s) SACOREY CLARK & LAVERNE HENDERSON

I, SACOREY CLARK whom is a Plaintiff in this case and I, LAVERNE HENDERSON whom is a Plaintiff in this case, Case No. #3:20-cv-00744-JPG, both Declare and Verify under penalty of perjury that the foregoing document is both True and Correct.
Executed on this Date of

_____Sacorey Clark_____
PLAINTIFF, SACOREY CLARK, Signature

_____
PLAINTIFF, LAVERNE HENDERSON, Signature

32

SACOREY CLARK
#5730-044
CZ-MEMPHIS
P.O. Box 34550
MEMPHIS, TN. 38184-0550

MAIL CLEARED
US MARSHALS

U.S. POSTAGE PAID
FCM LG ENV
MEMPHIS, TN
38134
SEP 11, 20
AMOUNT
$0.00
R2305H130656-02
1000
62201

7019 1120 0000 5525 2222

Clerk of the court
U.S. District court
Southern District of Illinois
750 Missouri Avenue
EAST. ST. LOUIS, IL 62201








RECEIVED

SEP 1 4 2020

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE